W. E. Keller, Plaintiff-Appellee, v. Ed Flynn and Samuel Lazarus, Copartners, Trading Under the Firm Name and Style of Sterling Sales Company, Defendants-Appellants.

## Gen. No. 10,554.

500

Opinion filed March 4, 1952. Rehearing denied May 7, 1952. Released for publication May 7, 1952.

BESSE & BESSE, of Sterling, for appellants; ROBERT W. BESSE, and L. VERNON FRYE, both of Sterling, of counsel.

JACOB CANTLIN, and SAMUEL RUBIN, both of Rock Falls, for appellee.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Defendants-appellants, Ed Flynn and Samuel Lazarus, copartners d/b/a Sterling Sales Company, appeal from a judgment for $956.50 damages, in favor of plaintiff-appellee, W. E. Keller, entered by the circuit court of Whiteside county on a jury verdict.

Some of the facts are undisputed. Appellee purchased sixty-six hogs at appellant's sale barn on July 27, 1950. They were purchased by appellee in three groups. A group of seventeen hogs consigned to the sales barn by an Illinois farmer are not in dispute. The dispute arises over two groups of hogs, one thirteen in number and the other thirty-six in number that had been shipped to appellant's sales barn

from Missouri. Appellee purchased the hogs from the sales ring, and on the same day paid for the hogs at the sales office and received a printed sheet which provided in part "not responsible for stock after leaving the premises. Title to livestock does not change from Sterling Sales, Inc. until buyer's check has cleared." He also received two vaccination certificates. Appellee had the hogs delivered to his farm and they were mixed with other hogs owned by him.

A number of the hogs died. The cause was submitted to the jury on a complaint consisting of two counts. Count I was based upon an express warranty theory, and Count IV was based upon an implied warranty theory. Motions for directed verdicts for judgment notwithstanding the verdict and for a new trial were denied.

Ed Flynn, one of the appellants, was called by appellee, under section 60 of the Practice Act, and testified that an auction was held on the day in question, and that appellee first purchased thirty-six hogs and then thirteen hogs. He testified that while he was in the sales ring he told appellee, "These pigs are long time treated," and that he meant the Missouri hogs which are the ones in dispute. He said that long time treated is B. V. T. treated which means six or eight months' immunity from cholera. He further testified that the previous owner told him they had been treated, and that he had talked to the veterinarian who had treated the hogs, and had received a veterinarian's certificate for the treatment. He was not present when they were treated. The disputed hogs were spotted Poland China and Poland China. He did not know what the appellee intended to do with the hogs. He told appellee that the hogs looked like a good buy. The certificate indicated that the hogs had been long time treated on June 1, 1950.

Appellee, testifying in his own behalf, stated that he purchased the disputed hogs, and that thirty-six were black Polands and that thirteen were mixed hogs that were hamps, whites, and spotted. He testified that appellant Flynn was working the ring and that Flynn told him prior to the purchase of the thirty-six hogs, "Buy them, Doc, they are safe. They are long time treated." Appellee testified that he would not have bought the hogs if Flynn had not said they were long time treated and safe. He testified that Flynn made no statement to him in regard to the purchase of the second group of thirteen Missouri hogs. He stated that he received the aforementioned printed sheet and the vaccination certificates. The hogs were trucked by him to his farm where they were put with other hogs that he owned. The second day following, one of the hogs of the group of thirty-six looked sick. The next morning several more of the same group looked sick, at which time he called the veterinarian, Dr. Calhoun. Dr. Calhoun treated the sick hog and several of the others that looked sick. The following day one died. The following week ten or twelve died. He stated that of the entire group thirty of the group of thirty-six died, and nine of the group of thirteen died, and that the last two hogs died on August 17. He testified that he spent about $158 on feed for the hogs that died.

Edward Calhoun testified that he was a licensed veterinarian, and that he was called to appellee's farm on Sunday, July 30, to treat a sick hog. His diagnosis was pneumonia. The following Wednesday he saw the hogs again. The first hog was still sick as was another one, which he also treated for pneumonia. He returned the following Friday but did not treat the hogs. He returned again on Sunday and injected the two hogs with erysipelas serum and penicillin. On Thursday, August 10, he posted the first pig and performed a

503

post mortem. His diagnosis was that the pig died of a streptococcus infection, and he put the whole herd on sulfa. As of August 11 only one pig had died. He treated the pigs daily until August 15. Between August 11 and 15 several more pigs died. On August 15 the hogs first developed symptoms of hog cholera. On August 16 he called Dr. Rossen for consultation, and they decided that it was hog cholera and administered anti-hog cholera serum. Dr. Calhoun testified that in his opinion the hogs died of hog cholera. He said that he did not determine that the hogs had cholera from the post mortem, but from observing them. His bill was $278.

Thomas Keller testified on behalf of the appellee, and stated that he was present at the time of the sale and heard the statement made by appellant Flynn and directed to the appellee.

Maude Keller testified on behalf of the appellee, and stated that she believed that thirty-nine hogs died, and that they were the ones purchased on the date in question.

Curtis Poppenhouse, a veterinarian, testified on behalf of the appellants, and stated that he treated three of appellee's hogs on August 6. He returned on August 7 and diagnosed the illness as erysipelas with complications of pneumonia and bowel infection. He did not examine any of the other hogs, and said that long time treatment will not give a perfect 100% immunity.

Harry C. Barth, a state approved veterinarian for the sale barn, testified that he examined all the hogs for sale on July 27 and that he accepted a certificate of vaccination from Dr. Clover of Canton, Missouri, certifying the disputed hogs to be long time treated. Dr. Barth issued his certificate on the basis of Dr. Clover's certificate and said the hogs looked clean and healthy.

Ed Flynn, one of the appellants, testified on his own behalf as follows: that he stated while in the sales ring that the disputed hogs were "an awfully good set of hogs," and that this statement was not made especially to appellee, but that when the group of thirteen hogs were sold, he said, "Doc, these look like good hogs. You had better buy them. They come with the rest of the hogs." He said that he made the statement that the thirty-six hogs were long time treated to appellee, but not to him alone. He testified that he made that statement to appellee alone on the group of thirteen hogs. This is the substance of the evidence of both parties.

The errors assigned are duplicitous, and the charge by appellant that the damages are excessive is not before this court as it is not argued by appellant. Analyzing the errors assigned, it appears that appellant contends that (1) it was error for the trial court to overrule appellant's motions for directed verdict, for judgment notwithstanding the verdict; (2) that the verdict of the jury is contrary to the manifest weight of the evidence and he is entitled to a new trial; and (3) the trial court erred in giving appellee instructions Nos. 1, 3, 4, and 5, and in refusing appellants' Instructions 20, 21, 22, 23, 24, and 27.

Appellants urged that the trial court committed reversible error in giving and refusing certain instructions. Appellants assigned as error, that the court gave instruction No. 1 on behalf of the plaintiff which is as follows:

"The court instructs the jury that no particular words or forms of expression are necessary to create an express warranty. A positive assertion of a matter of fact made by the seller at the time of the sale, for the purpose of assuring the buyer of the fact, and inducing him to make the purchase, if relied on by the purchaser, constitutes a warranty."

 The giving of a similar instruction was held reversible error in an analogous case, *Van Horn v. Stautz,* 297 Ill. 530. The instruction in the *Van Horn* case directed a verdict. Under the law this type of instruction must contain all the facts which will authorize the verdict directed and when the instruction omits facts or circumstances essential to recovery, it cannot be cured by any other given instruction. (*Hanson v. Trust Co. of Chicago,* 380 Ill. 194.) The above instruction does not direct a verdict and we deem that any error it contained was cured by the court in giving appellee's instruction No. 2, and appellants' instructions Nos. 13 and 15. The instructions are to be considered as a series and instruction No. 1 correctly stated the law read in conjunction with the other instructions.

 Instructions 1, 2, 13, and 15 are abstract in form, but under the issues they properly instructed the jury as to the law as to the warranty in question, and were not misleading. (*Sebree v. Thomas,* 166 Ill. App. 427; *MacAndrews and Forbes Co. v. Mechanical Mfg. Co.,* 367 Ill. 288; *Lindroth v. Walgreen Co.,* 329 Ill. App. 105.)

 We believe the court properly gave appellee's Instructions 3, 4, 5, and 11, and that they correctly state the law. We also find the court did not err in refusing to give defendants' instructions Nos. 20 and 21, which in effect told the jury that if the plaintiff had inspected the hogs that he could not recover. It is undisputed that the hogs looked healthy, and that no one could tell that there was anything wrong with them at the time of the sale. These last two instructions did not properly state the law under the facts in this case. On the whole it is our opinion that the jury was fully and correctly instructed as to the law, and appellants' contentions as to the instructions are without merit.

 Defendants further urge that even assuming there was a warranty, it was disclaimed by the appellants. It is true that a seller may disclaim a warranty. (55 Corpus Juris, Sales Section 698; Ill. Rev. Stat. 1949, chap. 121½, sec. 71.) [Jones Ill. Stats. Ann. 121.75.]

 The evidence discloses that the white slip or sales slip identified as plaintiff's Exhibit 1, in which it was stated that the sales barn was not responsible for livestock after it left the premises, was received from the defendant by the plaintiff when the hogs were paid for. A disclaimer of a warranty is ineffectual if it is made after the contract is concluded unless the buyer assents to the change. (160 A. L. R., sec. 5, page 370.) There is no evidence in this record that the plaintiff assented to or knew of the alleged disclaimer, and hence it was not binding upon him.

The final issues involved primarily contemplate determination as to whether or not the necessary elements exist which raise either an express warranty or an implied warranty or both. Considering first the express warranty theory, appellee testified that appellant Flynn stated, "Buy them, Doc, they are safe. They are long time treated." "Doc, they are long time treated, you better buy them." "If you need any hogs, Doc, there are some nice ones. They are long time treated and they are safe."

 Considered alone, these statements are positive averments of fact in regard to the hogs made at the time of the sale for the purpose of assuring the appellee of the truth of the facts stated, and inducing him to buy the hogs. Taking the testimony of appellee that, "I would not have purchased the hogs if Mr. Flynn had not said they were long time treated and safe," there is substantial evidence in the record that appellee relied on the statement made by appellant.

 The law is well established that no particular words or forms of expression are necessary to create an express warranty. (*Lindroth v. Walgreen Co., supra.*) An affirmation of quality amounting to a warranty must appear to have been made at the time of the sale with the intention of warranting quality and not as a mere expression of opinion. To determine whether or not there is a warranty, the decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment on a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion and to exercise his judgment. In the former case there is a warranty and in the latter there is not. These above rules of law are analyzed and announced in a case quite similar to the instant case. (*Van Horn v. Stautz, supra.*) The court reversed that case on the ground that an improper instruction was given, but held the warranty had been established otherwise. The court further says in that case on page 539 of the opinion: "Where the affirmation relied upon to constitute a warranty is oral, it is the province of the jury to determine from all the evidence whether they amount to an express warranty." In the instant case there is evidence to be fairly inferred from all the testimony in the record that the defendants did warrant the hogs to have been long time treated for cholera and safe, and that the hogs died of cholera. The representations were made by the defendant, and the plaintiff relied upon them and there is evidence in the record establishing these facts. These were questions of fact for the jury to determine, and we cannot say that the finding of the jury that the warranty was made and breached, thus causing damages to the plaintiff, is manifestly against the weight of the evidence.

We find no reversible error in this record; accordingly the judgment of the trial court is affirmed.

*Judgment affirmed.*