### AMERICAN CRYSTAL SUGAR CO. v. MANDEVILLE ISLAND FARMS, Inc. et al.

#### No. 12946.

United States Court of Appeals, Ninth Circuit.

March 11, 1952.

Writ of Certiorari Denied May 26, 1952.

See 72 S.Ct. 1052.

Louis W. Myers, Pierce Works, Los Angeles, Cal. (Donald S. Graham and Lewis, Grant, Newton, Davis & Henry, all of Denver, Colo., O'Melveny & Myers, Los Angeles, Cal., of counsel), for appellant.

Wood, Crump, Rogers & Arndt, Stanley M. Arndt and Guy Richards Crump, all of Los Angeles, Cal., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from a judgment awarding to appellees treble damages and attorneys' fees under Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

Appellant, here for convenience called Crystal, is a beet sugar manufacturer. The suit, waged under the anti-trust laws, is the outgrowth of a change in Crystal's method of determining the price to be paid appellees and other sugar beet growers for beets grown under contract with Crystal in the area which supplied the latter's Clarksburg, California, refinery. Both prior and subsequent to the crop years 1939, 1940 and 1941, Crystal's growers were paid on the basis of a contract formula comprising two variable factors: (1) the percentage sugar content of the beets grown by the particular grower, and (2) the average net return from the sugar manufactured in the Clarksburg refinery and sold during the crop year in question. This is termed the single net method, measured by the net returns

from sugar from Crystal's own factory. These returns were divided approximately 50–50 between manufacturer and grower.

During the years in suit, 1939, '40 and '41, the second variable of the price formula was changed by Crystal to the average net return from the sale of the sugar manufactured at the factories of the three sugar companies operating in Northern California, that is to say, Crystal and its two competitors in that area. This is termed the joint net method. Thus, instead of getting the advantage of Crystal's net returns, appellees were obliged to accept as the price basis the joint net return of the three manufacturers. The difference, trebled, between the price they would have received had the single net method been followed and the prices actually received during the three years is what appellees are seeking to recover.

The case has been in this court before, when we affirmed the trial court's dismissal of it while still in the pleading stage, on the ground that interstate commerce was not involved.[1] The Supreme Court, in a lengthy opinion, reversed, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328. In the latter opinion the integrated nature and peculiarities of the industry, the background of the relationship between refiner and grower, and the latter's virtually helpless situation, together with other factors of significance, were extensively developed. The sketchy outline we have given above will suffice, since the reader must of necessity examine what the Supreme Court had to say of the matter.

On remand the case was tried on the merits. The court found that the joint net method described was the result of a combination and conspiracy on the part of Crystal and its two competitors, that it eliminated competition in the purchase of sugar beets, that it deprived the beet growers of a reasonable price for their beets, that it illegally fixed the price of sugar beets, that it intentionally hindered and obstructed the free and natural flow in the purchase of sugar beets, and that an illegal monopoly had been established during the three years in which it was in vogue. The court did not find as a fact, and appears studiously to have refrained from finding, that the activities complained of affected interstate commerce in the end product, sugar, which alone was shipped and sold interstate. However, the court did determine in its conclusions of law that Crystal "wrongfully and unlawfully entered into, and during the crop years 1939, 1940 and 1941 remained and operated under, a combination and conspiracy which was in restraint of trade and commerce among the several states, and wrongfully and unlawfully conspired with other persons to monopolize part of the trade and commerce among the several states, in violation of and contrary to the Sherman Anti-Trust Act [15 U.S.C.A. §§ 1–7, 15 note] * * and did and performed acts forbidden" thereby, to the injury and damage of the plaintiffs. The court added that "these conclusions of law are in accordance with the law as held by the decision of the Supreme Court" when the case was before it.

This lack of an express finding that the price fixing combination had some substantial effect on interstate commerce is the first of two grounds on which Crystal relies for a reversal. Whether the ground is thought well chosen depends on the way one construes the Supreme Court's decision in the case. The opinion is ambiguous in this particular, and must ultimately be construed by the Court itself; but we may say at once that we feel obliged to agree with the trial court's appraisal of it.

The Court had before it only the pleadings, not the evidence as here. Nevertheless its discussion was not confined to a consideration of the allegations of fact but ranged beyond them into pronouncements concerning the inevitable effect of the price fixing combination upon the whole of this closely integrated industrial process. Thus the court stated at pages 240–241 of 334 U.S., at page 1008 of 68 S.Ct.:

"When therefore the refiners cease entirely to compete with each other in all stages of the industry prior to marketing

1. Mandeville Island Farms v. American Crystal Sugar Co., 9 Cir., 159 F.2d 71.

the sugar, the last vestige of local competition is removed and with it the only competitive opportunity for the grower to market his product. Moreover it is inconceivable that the monopoly so created will have no effects for the lessening of competition in the later interstate phases of the over-all activity or that the effects in those phases will have no repercussions upon the prior ones, including the price received by the growers.

"There were indeed two distinct effects flowing from the agreement for paying uniform growers' prices, one immediately upon the price received by the grower rendering it devoid of all competitive influence in amount; the other, the necessary and inevitable effect of that agreement, in the setting of the industry as a whole, to reduce competition in the interstate distribution of sugar.

"The idea that stabilization of prices paid for the only raw material consumed in an industry has no influence toward reducing competition in the distribution of the finished product, in an integrated industry such as this, is impossible to accept."

Further expressions of the same tenor are set out in the footnote.[2]

This survey of the decision points, we think, to the solution of the remaining question raised on the appeal, namely, whether the trial court was in error in the formula it employed in calculating the amount of damages. The method used was this: in the case of appellee Mandeville, it ascertained the damages on the basis of Mandeville's share of Crystal's single net returns from sugar sold during the 1937 and 1938 crop years as compared with the lesser amounts paid the grower in 1939 and 1940 under the joint net method; and for the year 1941 it awarded appellees Zuckerman and Evans a flat 25 cents per ton over what they received under the joint net method for that year.[3]

The parties are not in disagreement as to the correct measure of damages, assuming a right to any recovery was shown. The measure is concededly the difference, trebled, between the amounts actually realized by appellees during the critical crop years from the sale of their beets to Crystal, and what they would have realized during the period had the unlawful price fixing combination not been in existence. Crystal insists that the sole effect of the combination was to deprive appellees of the advantage of being paid on the basis of Crystal's single net return as compared with the joint net. Hence, it says, the court should have looked no further than

2. "Finally, the interdependence and inextricable relationship between the interstate and the intrastate effects of the combination and monopoly are shown perhaps most clearly by the provision of the uniform price agreement which ties in the price paid for beets with the price received for sugar. The percentage factor of interstate receipts from sugar which the grower's contract specifies shall enter his price for beets makes that price dependent upon the price of sugar sold interstate. The uniform agreement's effect, when added to this, is to deprive the grower of the advantage of the individual efficiency of the refiner with which he deals, in this case the most efficient of the three, and of the price that refiner receives. It is also to reflect in the grower's price the consequences of the combination's effects for reducing competition among the refiners in the interstate distribution of sugar.

"In sum, the restraint and its monopolistic effects were reflected throughout each stage of the industry, permeating its entire structure. This was the necessary and inevitable effect of the agreement among the refiners to pay uniform prices for beets, in the circumstances of this case. Those monopolistic effects not only deprived the beet growers of any competitive opportunity for disposing of their crops by the immediate operation of the uniform price provision; they also tended to increase control over the quantity of sugar sold interstate; and finally by the tie-in provision they interlaced those interstate effects with the price paid for the beets.

"These restrictive and monopolistic effects, resulting necessarily from the practices allegedly intended to produce them, fall squarely within the Sherman Act's prohibitions, creating the very injuries they were designed to prevent, both to the public and to private individuals." 334 U.S. 241, 242, 68 S.Ct. 1009.

3. For reasons not in controversy Mandeville's recovery was limited to the years 1939–40, and that of the other appellees to the year 1941.

to Crystal's single net returns from its Clarksburg operation for the three-year period in question, the precise amounts of which were stipulated.

■ It appears to be conceded, as we think it must be, Bigelow v. R.K.O. Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, that utilization of the 1937 and 1938 Clarksburg net in determining Mandeville's damages for 1939 and 1940 would, in other circumstances, have been a proper method. But it is claimed that the method was rendered speculative or inappropriate because the exact Clarksburg nets for the period were available and, indeed, stipulated to. As already indicated, the basic and necessary assumption of this argument is that Crystal's nets for the years in question were not in any way tainted, distorted or rendered unreliable because of the existence of the unlawful price fixing combination during those years. In light of what the Supreme Court has said in the passages quoted above and in the footnote, this assumption cannot be accepted. These pronouncements of the Court constitute for us, as for the trial court, the law of the case.

Relative to the damages found in the case of appellees Zuckerman and Evans for the year 1941, the trial court felt it would not be justified in using as a basis of computation the prices obtaining in the ensuing year 1942, that being a war year and conditions prevailing being so abnormal as to render the then price situation untrustworthy as a guide.[4] It found that prior to 1939, benefiting from intensive competition in all aspects of the sugar industry, Crystal's growers received 28 to 50 cents per ton more for beets than did growers for Crystal's competitors. It found that as a direct and planned result of the conspiracy, there was no longer such competition in the purchase of beets. Hence its award of 25 cents per ton to those appellees. All amounts of damages awarded were found to be "on the conservative side."

■ We cannot say that the Zuckerman and Evans awards were predicated on mere speculation and guesswork, or that the

evidence in their support is too uncertain to afford an acceptable basis for computation. Crystal is not in the circumstances in a position to capitalize on the uncertainties or on the difficulties of making proof. Cf. Bigelow v. R.K.O. Radio Pictures, supra; Eastman Kodak Co. v. Southern Material Photo Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544.

The judgment is affirmed.

■ Appellees have petitioned for the allowance of attorney fees on the appeal. No objection or opposition to the petition has been interposed. The trial court awarded $25,000 to cover attorney fees up to the time of the judgment, and we think a further award in the amount of $4,000 should be made for services in connection with the appeal, and it is so ordered.

4. Calculation based on 1942 prices would have been much more favorable to these appellees than resulted from the figures actually adopted.