**ROYAL BUSINESS MACHINES, INC.,
Plaintiff–Appellant,**

v.

**LORRAINE CORP. and Michael L.
Booher, Defendants–Appellees.**

**LORRAINE CORP. and Michael L.
Booher, Plaintiffs–Appellees,**

v.

**LITTON BUSINESS SYSTEMS, INC.
and Royal Business Machines, Inc.,
Defendants–Appellants.**

**Nos. 79–1946, 79–2256.**

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1980.

Decided Oct. 7, 1980.

Rehearing Denied Oct. 30, 1980.

BAKER, District Judge.

This is an appeal from a judgment of the district court entered after a bench trial awarding Michael L. Booher and Lorraine Corp. (Booher) $1,171,216.16 in compensatory and punitive damages against Litton Business Systems, Inc. and Royal Business Machines, Inc. (Royal). The judgment further awarded Booher attorneys' fees of $156,800.00. It denied, for want of consideration, the recovery by Royal of a $596,-921.33 indebtedness assessed against Booher earlier in the proceedings in a summary judgment. The judgment also granted Royal a set–off of $12,020.00 for an unpaid balance due on computer typewriters.

The case arose from commercial transactions extending over a period of 18 months between Royal and Booher in which Royal sold and Booher purchased 114 RBC I and 14 RBC II plain paper copying machines. In mid–August 1976, Booher filed suit against Royal in the Indiana courts claiming breach of warranties and fraud. On September 1, 1976, Royal sued Booher on his financing agreements in the district court and also removed the state litigation to the district court where the cases were consolidated.

The issues in the cases arise under Indiana common law and under the U.C.C. as adopted in Indiana, Ind.Code § 26–1–2–102 *et seq.* (1976). The contentions urged by Royal on appeal are that:

(1) substantial evidence does not support the findings that Royal made certain express warranties or that it breached any express warranty and, as a matter of law, no warranties were made; and

(2) substantial evidence does not support the findings that Royal breached the implied warranties of merchantability and fitness for a particular purpose; and

(3) substantial evidence does not support the finding that Booher made a timely revocation of acceptance of the goods sold; and

Philip B. Kurland, Chicago, Ill., for Royal Business Machines and Litton Business Systems.

Morris L. Klapper, Indianapolis, Ind., for Lorraine Corp. and Michael L. Booher.

Before PELL and WOOD, Circuit Judges, and BAKER, District Judge.*

---

* The Honorable Harold A. Baker, United States District Judge for the Central District of Illi-

nois, is sitting by designation.

(4) substantial evidence does not support the findings upon which the awards of compensatory damages were made and that certain awards constituted a double recovery; and

(5) substantial evidence does not support the findings upon which the awards of punitive damages were made.

We reverse and remand for a new trial on the grounds set forth in this opinion.

### EXPRESS WARRANTIES

We first address the question whether substantial evidence on the record supports the district court's findings that Royal made and breached express warranties to Booher. The trial judge found that Royal Business Machines made and breached the following express warranties:

(1) that the RBC Model I and II machines and their component parts were of high quality;

(2) that experience and testing had shown that frequency of repairs was very low on such machines and would remain so;

(3) that replacement parts were readily available;

(4) that the cost of maintenance for each RBC machine and cost of supplies was and would remain low, no more than ½ cent per copy;

(5) that the RBC machines had been extensively tested and were ready to be marketed;

(6) that experience and reasonable projections had shown that the purchase of the RBC machines by Mr. Booher and Lorraine Corporation and the leasing of the same to customers would return substantial profits to Booher and Lorraine;

(7) that the machines were safe and could not cause fires; and

(8) that service calls were and would be required for the RBC Model II machine on the average of every 7,000 to 9,000 copies, including preventive maintenance calls.

■ Substantial evidence supports the court's findings as to Numbers 5, 7, 8, and the maintenance aspect of Number 4, but, as a matter of law, Numbers 1, 2, 3, 6, and the cost of supplies portion of Number 4 cannot be considered express warranties.

Paraphrasing U.C.C. § 2–313 as adopted in Indiana,[1] an express warranty is made up of the following elements: (a) an affirmation of fact or promise, (b) that relates to the goods, and (c) becomes a part of the basis of the bargain between the parties. When each of these three elements is present, a warranty is created that the goods shall conform to the affirmation of fact or to the promise.

■ The decisive test for whether a given representation is a warranty or merely an expression of the seller's opinion is whether the seller asserts a fact of which the buyer is ignorant or merely states an opinion or judgment on a matter of which the seller has no special knowledge and on which the buyer may be expected also to have an opinion and to exercise his judgment. *Weiss v. Rockwell Mfg. Co.*, 9 Ill. App.3d 906, 293 N.E.2d 375 (1977), *citing Keller v. Flynn*, 346 Ill.App. 499, 105 N.E.2d 532, 536 (1952); *General Supply & Equipment Co. v. Phillips*, 490 S.W.2d 913 (Tex.

1. Ind. Code § 26–1–2–313 (1976) provides:
   (1) Express warranties by the seller are created as follows:
   (a) any *affirmation of fact or promise* made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
   (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
   (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he had a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

42

Civ.App.1972). General statements to the effect that goods are "the best," *Thompson Farms, Inc. v. Corno Feed Products,* —— Ind.App. ——, 366 N.E.2d 3 (1977), or are "of good quality," *Olin–Mathieson Chemical Corp. v. Moushon,* 93 Ill.App.2d 280, 235 N.E.2d 263 (1968), or will "last a lifetime" and be "in perfect condition," *Performance Motors, Inc. v. Allen,* 280 N.C. 385, 186 S.E.2d 161 (1972), are generally regarded as expressions of the seller's opinion or "the puffing of his wares" and do not create an express warranty.

■■ No express warranty was created by Royal's affirmation that both RBC machine models and their component parts were of high quality. This was a statement of the seller's opinion, the kind of "puffing" to be expected in any sales transaction, rather than a positive averment of fact describing a product's capabilities to which an express warranty could attach. *Thompson Farms, Inc. v. Corno Feed Products, supra; Keller v. Flynn, supra.*

■ Similarly, the representations by Royal that experience and testing had shown that the frequency of repair was "very low" and would remain so lack the specificity of an affirmation of fact upon which a warranty could be predicated. These representations were statements of the seller's opinion.

■ The statement that replacement parts were readily available is an assertion of fact, but it is not a fact that relates to the goods sold as required by Ind.Code § 26–1–2–313(1)(a) and is not an express warranty to which the goods were to conform. Neither is the statement about the future costs of supplies being ½ cent per copy an assertion of fact that relates to the goods sold, so the statement cannot constitute the basis of an express warranty.

■ It was also erroneous to find that an express warranty was created by Royal's assurances to Booher that purchase of the RBC machines would bring him substantial profits. Such a representation does not describe the goods within the meaning of U.C.C. § 2–313(1)(b), nor is the representation an affirmation of fact relating to the goods under U.C.C. § 2–313(1)(a). It is merely sales talk and the expression of the seller's opinion. *See Regal Motor Products v. Bender,* 102 Ohio App. 447, 139 N.E.2d 463, 465 (1956) (representation that goods were "readily saleable" and that the demand for them would create a market was not a warranty). *See also Conant v. Terre Haute National State Bank,* 121 Ind. 323, 22 N.E. 250, 251 (1889); *Harness v. Horne,* 20 Ind.App. 134, 50 N.E. 395, 397 (1898).

■ On the other hand, the assertion that the machines could not cause fires is an assertion of fact relating to the goods, and substantial evidence in the record supports the trial judge's findings that the assertion was made by Royal to Booher.[2] The same may be said for the assertion that the machines were tested and ready to be marketed. *See Bemidji Sales Barn v. Chatfield,* 312 Minn. 11, 250 N.W.2d 185 (1977) (seller's representation that cattle "had been vaccinated for shipping fever and were ready for the farm" constituted an express warranty). *See generally* R. Anderson, *Uniform Commercial Code* § 2–313:36 (2d ed. 1970) (author asserts that seller who sells with seal of approval of a third person, e. g., a testing laboratory, makes an express warranty that the product has been tested and approved and is liable if the product was in fact not approved). The record supports the district court's finding that Royal represented that the machines had been tested.[3]

2. Michael Booher testified at trial that in February or March of 1975 he called the service department at Royal Typewriter Company and spoke with either Bruce Lewis, national service manager, or with Joe Miller. Booher testified that he told the Royal representative that he had received a report of a fire in an RBC I machine at a customer's office. Booher then testified, "They told me that that couldn't hap-

pen." (Tr. Vol. IV, pp. 457–59). For a discussion of whether the assertions about fires, maintenance, and service calls became part of the basis of the bargain, see *infra,* pp. 44–45.

3. The trial court's findings speak of "RBC machines" with reference to the testing warranty. The court's specific findings, however, refer only to the RBC II machine. On retrial, it

■ As for findings 8 and the maintenance portion of Number 4, Royal's argument that those statements relate to predictions for the future and cannot qualify as warranties is unpersuasive.[4] An expression of future capacity or performance can constitute an express warranty. In *Teter v. Schultz*, 110 Ind.App. 541, 39 N.E.2d 802, 804 (1942), the Indiana courts held that a seller's statement that dairy cows would give six gallons of milk per day was an affirmation of fact by the seller relating to the goods. It was not a statement of value nor was it merely a statement of the seller's opinion. The Indiana courts have also found that an express warranty was created by a seller's representation that a windmill was capable of furnishing power to grind 20 to 30 bushels of grain per hour in a moderate wind and with a very light wind would pump an abundance of water. *Smith v. Borden*, 160 Ind. 233, 66 N.E. 681 (1903). Further, in *General Supply and Equipment Co. v. Phillips, supra*, the Texas courts upheld the following express warranties made by a seller of roof panels: (1) that tests show no deterioration in 5 years of normal use; (2) that the roofing panels won't turn black or discolor ... even after years of exposure; and (3) that the panels will not burn, rot, rust, or mildew. *Snow's Laundry and Dry Cleaning v. Georgia Power Co.*, 61 Ga.App. 402, 6 S.E.2d 159 (1959), impliedly recognized that a warranty as to future gas consumption following installation of gas equipment was possible. In holding that no warranty was created in that particular case, the Georgia court noted: "The statements made by Spencer were denominated by him as estimates, nowhere did he warrant or guarantee that the gas consumption would not exceed $230.50 per month." 61 Ga.App. at 405, 6 S.E.2d at 162. *See Matlack, Inc. v. Butler Mfg. Co.*, 253 F.Supp. 972 (E.D.Pa.1966).

■ Whether a seller affirmed a fact or made a promise amounting to a warranty is a question of fact reserved for the trier of fact. *General Supply and Equip. Co. v. Phillips, supra*. Substantial evidence in the record supports the finding that Royal made the assertion to Booher that maintenance cost for the machine would run ½ cent per copy and that this assertion was not an estimate but an assertion of a fact of performance capability.[5]

■ Finding Number 8, that service calls on the RBC II would be required every 7,000 to 9,000 copies, relates to performance capability and could constitute the basis of an express warranty. There is substantial evidence in the record to support the finding that this assertion was also made.[6]

would clarify matters if the specific machine intended were named.

Michael Booher testified at trial that Tom Gavel had assured Booher the Royal Bond Copier machine had been tested: "He [Gavel] said, 'They have been well tested,' and said, 'They are great machines.'" (Tr. Vol. III, p. 292).

Booher also testified that Jack Airey, a Royal representative, had stated at a promotional meeting that the RBC II had been extensively tested and was ready to market: "They [Royal] were now ready to market it [RBC II]; that it had been extensively tested." (Tr. Vol. III, p. 317).

4. In Number 4, the trial court found that the appellant warranted that the cost of maintenance for each RBC machine and cost of supplies was and would remain low, no more than ½ cent per copy, and in Number 8 that service calls were and would be required for the RBC Model II machine approximately every 7,000 to 9,000 copies.

5. Michael Booher testified at trial that Mr. Gavel, a Royal representative, told Booher in April 1974, at a meeting in Booher's Indianapolis office, that cost for service on the RBC I machine would be a half cent. (Tr. Vol. III, pp. 294–98). Booher further testified that in July 1974, at a meeting in Chicago sponsored by Royal, he was told by Jack Airey, a Royal representative, that maintenance costs for the RBC II machine would be the same as on the RBC I, except that service costs should actually be a little less due to the reliability of the machine. (Tr. Vol. III, pp. 320–21).

Gavel testified by deposition taken on May 27, 1977, which was admitted into evidence at trial, that he told Booher that service costs for the RBC I machine would be half a cent (Gavel Dep., p. 28). He further testified in reference to the costs quoted to dealers on the RBC II machines that "[n]obody ever implied they were estimates," (Gavel Dep., p. 110).

6. Michael Booher testified at trial that at the Chicago meeting Royal representatives, Jack

While substantial evidence supports the trial court's findings as to the making of those four affirmations of fact or promises, the district court failed to make the further finding that they became part of the basis of the bargain. Ind.Code § 26–1–2–313(1) (1976). While Royal may have made such affirmations to Booher, the question of his knowledge or reliance is another matter.[7]

This case is complicated by the fact that it involved a series of sales transactions between the same parties over approximately an 18–month period and concerned two different machines. The situations of the parties, their knowledge and reliance, may be expected to change in light of their experience during that time. An affirmation of fact which the buyer from his experience knows to be untrue cannot form a part of the basis of the bargain. *City Machine & Mfg. Co. v. A. & A. Machinery Corp.*, 4 UCCRS 461 (E.D.N.Y.1967). *See generally* R. Anderson, *Uniform Commercial Code*, § 22–313:18 (2d ed. 1970). Therefore, as to each purchase, Booher's expanding knowledge of the capacities of the copying machines would have to be considered in deciding whether Royal's representations were part of the basis of the bargain. The same representations that could have constituted an express warranty early in the series of transactions might not have qualified as an express warranty in a later transaction if the buyer had acquired independent knowledge as to the fact asserted.

The trial court did not indicate that it considered whether the warranties could exist and apply to each transaction in the series. Such an analysis is crucial to a just determination. Its absence renders the district court's findings insufficient on the issue of the breach of express warranties.

Since a retrial on the questions of the breach of express warranties and the extent of damages is necessary, we offer the following observations. The court must consider whether the machines were defective upon delivery. Breach occurs only if the goods are defective upon delivery and not if the goods later become defective through abuse or neglect. *Chisholm v. J. R. Simplot Co.*, 94 Idaho 628, 495 P.2d 1113 (1972).

In considering the promise relating to the cost of maintenance, the district court should determine at what stage

---

Airey and Roland Schultz, told him that the RBC II machines would require "a service call, a customer–related call about every nine thousand copies, and that we would have preventative maintenance calls about every twenty to twenty–one thousand copies . . . ." (Tr. Vol. III, p. 325).

**7.** The requirement that a statement be part of the basis of the bargain in order to constitute an express warranty "is essentially a reliance requirement and is inextricably intertwined with the initial determination as to whether given language may constitute an express warranty since affirmations, promises and descriptions tend to become a part of the basis of the bargain. It was the intention of the drafters of the U.C.C. not to require a strong showing of reliance. In fact, they envisioned that all statements of the seller become part of the basis of the bargain unless clear affirmative proof is shown to the contrary. *See* Official Comments 3 and 8 to U.C.C. § 2–313." *Sessa v. Riegle*, 427 F.Supp. 760, 766 (E.D.Pa.1977), *aff'd without op.* 568 F.2d 770 (3d Cir. 1978).

*Cf. Woodruff v. Clark County Farm Bureau Coop. Ass'n*, 153 Ind.App. 31, 286 N.E.2d 188 (1972) where the court stated: "Whether such assertions [statements by the seller] constituted express warranties and whether [the buyer] *relied* upon these assertions are material issues of fact to be determined by the trier of fact." 286 N.E.2d at 199 (emphasis added); *Stamm v. Wilder Travel Trailers*, 44 Ill.App.3d 530, 358 N.E.2d 382 (1976) (reliance necessary in order to give rise to an express warranty).

"[F]or all practical purposes it is suggested that no great change was wrought by the Code. Whether one speaks of reliance or basis of the bargain, little difference exists between the two. In neither case should the statement be required to have been the sole factor leading the buyer to purchase. In either case, the statement should, at least, be one of such factors. What is really crucial is whether the statement was made as an affirmation of fact, the goods did not live up to the statement, and the defect was not so apparent that the buyer could not be held to have discovered it for himself." *Bender's U.C.C. Service, Dusenberg & King, Sales and Bulk Transfers* § 6.01, n. 2. (Matthew Bender & Co. 1980).

Booher's own knowledge and experience prevented him from blindly relying on the representations of Royal. A similar analysis is needed in examining the representation concerning fire hazard in the RBC I machines. The court also should determine when that representation was made. If not made until February 1975, the representation could not have been the basis for sales made prior to that date.

## FRAUD AND MISREPRESENTATION

The district court found that beginning in April or May of 1974 and continuing throughout most of 1975, Royal, by and through its agents and employees acting in the course and scope of their employment, persuaded Booher to buy RBC I and RBC II copiers by knowingly making material oral misrepresentations [8] which were relied upon by Booher to his injury.

Under Indiana law, the essential elements of actionable fraud are representations, falsity, scienter, deception, and injury. *Middelkamp v. Hanewich*, 147 Ind. App. 561, 263 N.E.2d 189 (1970). A fraud action must be predicated upon statements of existing facts, not promises to perform in the future. *Conant v. Terre Haute Nat'l State Bank*, 121 Ind. 323, 22 N.E. 250, 251 (1889). Nor do expressions of opinion qualify as fraudulent misrepresentations. The district court made no specific findings as to which of the alleged representations it relied upon in finding fraud. If the court held all eight to be fraudulent misrepresen-

tations, the court erred as to Numbers 1, 2, and 6 because, as discussed above, these were merely expressions of the seller's opinion rather than statements of material fact upon which a fraud action could be based. Numbers 3, 4, 5, 7, and 8, on the other hand, readily qualify as material factual representations.[9]

The specific findings of the district court with regard to scienter connected to findings 3, 4, 5 (as it applied to the RBC II), 7, and 8 are upheld by the record.[10] State of mind is a question to be determined, if at all possible, by the trier of fact.

The trial court, however, is silent on the remaining question, that of deception or reasonable reliance by Booher on the representations in the various transactions. *Gonderman v. State Exchange Bank, Roann*, 166 Ind.App. 181, 189–90, 334 N.E.2d 724 (1975). This issue is virtually identical to the basis of the bargain question remanded under the express warranty theory.

The district court's finding of fraud, therefore, must be set aside, and the cause remanded for retrial on the questions of the specific misrepresentations relied upon by Booher in each transaction and the reasonableness of that reliance.

With regard to rescission as a remedy for fraud, rescission would be available only for those specific sales to which fraud attached. *Wolfeld v. Hanika*, 95 Ind.App. 44, 179 N.E. 178 (1932).

---

**8.** The false representations which form the basis of the appellees' fraud theory are the same as those alleged to be express warranties.

**9.** Findings Number 3 and the cost of supplies aspect of Number 4 qualify as representations of fact while they do not qualify as express warranties because in a fraud action, unlike a breach of warranty action, there is no requirement that the representations relate to the goods.

**10.** The district court found scienter regarding the following misrepresentations during the specified time periods:

RBC I machine–
(1) From 1971 on, that potential for fire did not exist;

(2) In April, May, 1974, that replacement parts were readily available;
(3) In April, May, 1974, that dealer cost per copy for both service and supplies would not exceed 1¢.

RBC II machine–
(1) As of July, 1974, that the average number of copies run between service calls would be 7,000–9,000;
(2) In July, 1974, that the machine had been extensively tested;
(3) In July, 1974, that the cost of servicing and supplying the machine was less than 1¢ per copy;
(4) In July, 1974, that replacement parts were readily available.

*IMPLIED WARRANTIES*

The district court found that Royal breached the implied warranties of merchantability and of fitness for a particular purpose. We cannot agree that the record supports the court's findings.

A warranty of merchantability is implied by law in any sale where the seller is a merchant of the goods. To be merchantable, goods must, *inter alia*, pass without objection in the trade under the contract description, be of fair average quality, and be fit for the ordinary purposes for which such goods are used. Ind.Code § 26–1–2–314 (1976). They must "conform to ordinary standards, and . . . be of the same average grade, quality and value as similar goods sold under similar circumstances." *Jones v. Abriani*, —— Ind.App. ——, 350 N.E.2d 635, 645 (1976), *citing Woodruff v. Clark County Farm Bureau Coop. Ass'n*, 153 Ind.App. 31, 286 N.E.2d 188 (1972). It was Booher's burden to prove that the copying machines were not merchantable. *Mullet v. Emme*, 144 Ind. App. 638, 248 N.E.2d 178 (1969); *McMeekin v. Gimble Bros. Inc.*, 223 F.Supp. 896 (W.D. Pa.1963). Booher failed to satisfy his burden of proof as to standards in the trade for either the RBC I or RBC II machine. No evidence supports the trial court's findings of a breach of the implied warranty of merchantability.

An implied warranty of fitness for a particular purpose arises where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods. Ind.Code § 26–1–2–315 (1976). The court found that Royal knew the particular purpose for which all the RBC machines were to be used and, in fact, that Royal had taken affirmative steps to persuade Booher to become its dealer and that occasionally its employees even accompanied Booher on calls to customers. *See Thompson Farms, Inc. v. Corno Feed Products, supra.*

The district court, however, failed to distinguish between implied warranties on the RBC I and on the RBC II machines. Nor did the court differentiate among the different transactions involving the two machines. On remand the district court should make further findings on Booher's actual reliance on Royal's skill or judgment in each purchase of the RBC I and RBC II machines. We view it as most unlikely that a dealer who now concedes himself to be an expert in the field of plain paper copiers did not at some point, as his experience with the machines increased, rely on his own judgment in making purchases.

We are troubled by one further aspect of the district court's rulings. It is the law that a plaintiff may not recover for breach of express or implied warranty "where the facts proven show that there are several possible causes of an injury, for one or more of which the defendant was not responsible and it is just as reasonable and probable that the injury was the result of one cause or the other . . . ." *Republic Corp. v. Procedyne Corp.*, 401 F.Supp. 1061, 1070 (S.D.N.Y.1975). *Accord, Chisholm v. J. R. Simplot Co., supra.* Royal argues that the evidence demonstrates that Booher's modifications of the machines and lack of maintenance were the cause of the damages claimed. The district court found as to both machines that "certain modifications were made which were necessitated by machine defects or by parts shortages all of which were suggested by representatives of Royal–Litton." On remand, the district court should clarify its holding. Is the district court holding that Royal is estopped from arguing modification as a defense? Or, in the alternative, has the court found breach of warranties to be the sole cause of damages?

We reject Royal's argument that the implied warranties have been limited or disclaimed. Such a disclaimer must be clear, conspicuous, conscionable, and consciously bargained for, and, in the case of an implied warranty of fitness for a particular purpose, the disclaimer must be in writing. Ind.Code § 26–1–2–316(2) (1976); *See also* Ind.Code § 26–1–2–317(c) (1976); *Woodruff v. Clark County Farm Bureau*

*Coop. Ass'n,* 153 Ind.App. 31, 286 N.E.2d 188 (1972).

## REVOCATION OF ACCEPTANCE

The district court found that Booher made a timely revocation of acceptance of both the RBC I and the RBC II machines. We disagree.

The U.C.C. provides that a buyer who has accepted goods may revoke his acceptance when the goods are non–conforming and their value is impaired and "the goods were accepted without knowledge of the non–conformity or acceptance occurred with the reasonable assumption that the defect would be cured," Ind.Code § 26–1–2–608(1) (1976), and "the revocation occurred within a reasonable time and before any substantial change in the condition of the goods," Ind.Code § 26–1–2–608(2) (1976).

■ Regarding the RBC I machines, the district court found that Booher accepted the machines without discovering the latent defects, including the fire hazard defect, which did not become apparent until the machines were in use. The district court further found (1) that Royal assured Booher that the machines were not defective and/or would not catch fire, (2) that Booher revoked acceptance of the RBC I machines within a reasonable time after discovery was made that fires were indeed possible, and (3) that revocation took place before any substantial change had occurred to the machines except such changes as were caused or necessitated by defects in the equipment itself and by the shortages of Royal replacement parts.[11]

Booher purchased his first RBC I in June 1974. He purchased additional machines through December of 1975. The district court found that it was not until the fall of 1976 that Booher received first–hand confirmation of "open flame" fires in the machines and that in February 1975, Booher

had asked Royal about fire hazard and had been assured that there was no danger of fire. The revocation of acceptance of the goods occurred on December 3, 1976, three months after the commencement of this litigation.

The evidence is uncontradicted that Booher had complaints from customers as early as February 4, 1975 that "burn jams" occurred in the RBC I. Those complaints recurred during the two–year period Booher was operating the Royal franchise and must have put him on notice of a problem inherent in the RBC I. The other "defects" in function claimed by Booher–copy quality, electrical defects, and gross jamming problems–were also well–known from his experience with the RBC I and, as shown by the evidence, became apparent soon after Booher became the franchise operator.

■ Rule 52(a) of the Federal Rules of Civil Procedure provides that upon appellate review a district court's "findings of fact shall not be set aside unless clearly erroneous." In *United States v. United States Gypsum Co.,* 33 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), the Supreme Court said: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake ·has been committed." *See generally* 5A Moore's Federal Practice ¶ 52.03(1) (1980). Where, as here, the decisions of the trial court do not appear to be based upon the credibility of the witnesses,[12] and the underlying facts are uncontroverted, and no reason appears for not believing them, the scope of review becomes even broader. *Apolskis v. Concord Life Ins. Co.,* 445 F.2d 31, 34 (7th Cir. 1971). Considering all the evidence in the case bearing on timeliness of revocation, we are "left with the definite and firm conviction that a mistake has been committed." The

---

11. The district court failed to make specific findings on the effect of the claimed lack of maintenance on the functional failures of the RBC I machines. We are unable to tell, therefore, whether Booher's maintenance was a contributing factor in the breakdown of the ma-

chines. If it was, revocation would not be an available remedy even had the revocation been timely.

12. The findings of fact and conclusions of law make no reference to credibility.

district court's finding that Booher's revocation of acceptance of the RBC I machines was reasonable in time is clearly erroneous. The finding is contrary to the clear weight of the evidence which reveals that, for some two and one–half years prior to revocation, Booher had been purchasing RBC I machines with full knowledge of their operating deficiencies. Added to that, the revocation did not occur until three and one–half months after the inception of this litigation.

■■■ The same may be said for the RBC II copiers. What is a reasonable time within which to revoke acceptance of goods depends upon the nature, purpose, and circumstances of the particular case. "Reasonable time" does not necessarily mean immediately. *Trailmobile Div. of Pullman, Inc. v. Jones*, 118 Ga.App. 472, 164 S.E.2d 346 (1968). Booher had known of the defects in the RBC II machines since approximately August of 1974. The evidence reveals, however, that Royal continually made promises to cure the RBC II defects and in April of 1976 replaced nine of Booher's oldest RBC II machines with nine new RBC II machines. On June 30, 1976, Royal modified the remaining five RBC II machines that had not been replaced. A seller's repeated assurances to cure can extend the time within which revocation is reasonable. *Jones v. Abriani, supra*. However, it was some seven months after the replacement of the nine RBC II machines that Booher finally revoked acceptance. If the defects had not been cured, that must have been known to Booher long before December 3, 1976. The trial court's finding that revocation of acceptance of the RBC II machines was timely was in error. *Heibel v. United States Air Conditioning Corp.*, 206 Minn. 288, 288 N.W. 393 (1939).

Since the remedy of revocation is not available to Booher, on rehearing the district court may reinstitute the summary judgment, which was previously vacated, awarding Royal the $596,921.33 unpaid balance on the purchase price of the copying machines.

## PUNITIVE DAMAGES

The district court awarded punitive damages in the sum of $83,512.80 to Booher and $376,492.32 to Lorraine Corp., for a total of $460,005.12. Royal argues strongly that no valid ground exists in law or in fact for the imposition of punitive damages.

■■■ Generally, Indiana follows the rule that punitive damages ordinarily are not awarded in cases involving a breach of contract. *Monte Carlo, Inc. v. Wilcox*, ——— Ind.App. ———, 390 N.E.2d 673 (1979). However, in *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976), the Indiana Supreme Court held that punitive damages may be awarded "where the conduct of the breaching party not only amounts to a breach of the contract, but also *independently* establishes the elements of a common–law tort such as fraud." *Id.* at 180. Alternatively, the court continued, punitive damages may be awarded in the absence of an independent tort if "it appears from the evidence as a whole that a serious wrong, tortious in nature, has been committed, but the wrong does not conveniently fit the confines of a pre–determined tort ... [and] that the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated." *Id.* This policy has been applied in a series of cases following *Vernon Fire*. *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704 (7th Cir. 1979); *First Fed. Sav. & Loan Ass'n of Indianapolis v. Mudgett*, ——— Ind. App. ———, 397 N.E.2d 1002 (1979); *Sandock v. F. D. Borkholder Co.*, ——— Ind.App. ———, 396 N.E.2d 955 (1979); *United Farm Bureau Family Life Ins. v. Fultz*, ——— Ind.App. ———, 375 N.E.2d 601 (1978); *State Farm Mut. Auto. Ins. Co. v. Shuman*, ——— Ind.App. ———, 370 N.E.2d 941 (1977); *Hibschman Pontiac, Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977); *Joseph Schlitz Co. v. Central Beverage Co.*, ——— Ind.App. ———, 359 N.E.2d 566 (1977).

■■■ The district court does not specify which aspect of the *Vernon Fire* test the court relied upon in awarding punitive damages. The court awarded punitive damages against Royal "for the found willful tor-

tious misconduct." If the award of punitive damages was based on fraud, then the award must be reconsidered along with the issue of fraud as discussed earlier in this opinion. Under a fraud theory, punitive damages can be awarded only for those specific transactions which constitute actionable fraud.

*Vernon Fire*, however, makes it clear that, as an alternative, an award of punitive damages can be supported by tortious conduct other than actionable fraud. *State Farm Mut. Auto. Ins. Co. v. Shuman, supra.* Absent fraud, there are two prerequisites to recovery: (1) the commission of a serious wrong, tortious in nature; and (2) the public interest must be served by the award. The Indiana courts have interpreted conduct "tortious in nature" to include an act committed with a fraudulent state of mind, *First Fed. Sav. & Loan Ass'n of Indianapolis v. Mudgett, supra,* or in bad faith, *Jones v. Abriani, supra,* even though all the elements of actionable fraud are not proved.

In this case, conduct which could constitute a breach of contract might also be tortious in nature, *Monte Carlo, Inc. v. Wilcox, supra,* and an award of exemplary damages might serve the public interest by deterring others from like conduct. *But see Owen Co. Farm Bureau Coop. v. Waeger,* 73 Ind.Dec. 482 (Ind.Ct.App.1980) (breach did not rise to level of oppression, fraud, or malice). If the district court's award of punitive damages is based on the second aspect of *Vernon Fire*, the award must be reconsidered together with the issues of breach of express and implied warranties as discussed earlier in this opinion. Punitive damages could only be awarded for those transactions constituting a breach of contract.

Royal argues that a statutory authorization of attorneys' fees, Ind.Code § 26–1–2–721 (1976) [13] precludes an award of punitive damages. *Johnson v. Tyler,* 277 N.W.2d 617 (Iowa 1979), and *Stoner v. Houston,* 265 Ark. 928, 582 S.W.2d 28 (1979), cited by Royal to support its argument, are inapposite. They deal with situations providing for statutory treble damages where an additional allowance of punitive damages would work a double punishment. Treble damages are punitive in nature. Attorneys' fees are compensatory. The comments accompanying Ind.Code § 26–1–2–721 state: "The purpose of this section is to add the statutory remedies to the ordinary remedies." It seems evident that Ind.Code § 26–1–2–721 does not extinguish the common law right to recover punitive damages in a fraud action.

*ATTORNEYS' FEES*

Booher has asked for reasonable attorneys' fees in defending this appeal. Attorneys' fees on appeal may be awarded to an appellee where the judgment is affirmed on appeal. *Marshall v. Reeves,* 262 Ind. 403, 316 N.E.2d 828 (1974); *Willsey v. Hartman,* 150 Ind.App. 485, 276 N.E.2d 577 (1971); *Michael–Regan Co. v. Lindell,* 527 F.2d 653 (9th Cir. 1975); *American Crystal Sugar Co. v. Mandeville Island Farms, Inc.,* 195 F.2d 622 (9th Cir. 1952); *North Texas Producers Ass'n v. Metzger Dairies, Inc.,* 348 F.2d 189 (5th Cir. 1965); *American Can Co. v. Ladoga Canning Co.,* 44 F.2d 763 (7th Cir. 1930); *Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946). This is not an appropriate case in which to award attorneys' fees. The appellees' petition is therefore denied. Moreover, the district court's grant to Booher of $156,800.00 in attorneys' fees is nullified by this reversal. A reversal of an entire judgment negates the judgment and any orders based upon it. *Doughty v. State*

---

**13.** Ind.Code § 26 1–2–721 provides:

Remedies for fraud–Right to attorney fees.- Remedies for material misrepresentation or fraud include all remedies available [under Article 2] for nonfraudulent breach. In all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, he shall also be entitled to recover reasonable attorneys fees which shall be entered by the court trying the suit as part of the judgment in that suit. Neither rescission or a claim for rescission of the contract for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

*Dep't. of Public Welfare,* 233 Ind. 475, 477, 121 N.E.2d 645, 646 (1954); *Hunter v. Hunter,* 156 Ind.App. 187, 188, 295 N.E.2d 834, 835 (1973).

For the foregoing reasons the judgment of the district court is reversed, and the cause is remanded for a new trial on the remaining issues outlined herein. Each party is to bear its own costs.