**WESTERN PAPER COMPANY, a foreign corporation, Appellant,**

v.

**Gerald BILBY d/b/a Variety Press, Appellee.**

No. 69757.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 19, 1989.

John A. Dunnery, Tulsa, for appellant.

M.D. Bedingfield, Chapel, Wilkinson, Riggs & Abney, Tulsa, for appellee.

MEANS, Presiding Judge.

Plaintiff appeals from the trial court's order which overruled its motion for new trial in this action to collect on an open account. Having reviewed the record and applicable law, we affirm.

Defendant Bilby is in the business of custom printing. In 1984, one of Bilby's customers, Advance Chemical, placed an order for 22,000 labels with permanent adhesive. Bilby ordered the appropriate amount of paper stock, Mactac Starliner Permanent, from Plaintiff Western Paper, which in turn ordered the paper from Mactac. In April 1984, Western Paper delivered fourteen sealed cartons of paper to Bilby. Each carton was labeled with the red Starliner label which indicated permanent adhesive backing.

The Mactac Starliner Permanent has red lines on the back to identify it as permanent adhesive. Mactac also manufactures a removable adhesive type paper which is identified by blue labels and blue lines on the back of the paper. Other than the lines on the back of the paper, the permanent and removable adhesives are not distinguishable from the front side.

The uncontroverted testimony was that all fourteen boxes which Western Paper delivered to Bilby were labeled with the red label. The testimony also showed that when the boxes were opened, the red label was found on top of the paper to show that it was permanent. In the process of manufacturing the labels for its customer, Bilby cut the paper into smaller pieces and printed it with three separate colors. Bilby's testimony was that during this process the paper was always loaded from the same side and was never turned over. The print-

ers rely on the labeling on the outside and inside of the box to determine the proper paper.

Bilby delivered the printed labels to his customer, Advance Chemical. Shortly thereafter he was notified by Advance Chemical that the labels were not sticking to the drums. Bilby called Western Paper to complain and was told that a Mactac representative would help him determine the problem. He went to Advance Chemical with Mactac's representative to try to discover why the labels weren't adhering. The Mactac representative advised Bilby to use a higher grade of paper, and Bilby upgraded his order to replace the defective labels.

Bilby also retrieved the unsatisfactory labels from Advance Chemical. When he was putting the labels in the trash, he discovered that thousands of them had a blue line backing—an indication that the labels had been printed on removable adhesive paper. Bilby determined that approximately ⅔ of the order had been printed on the wrong paper.

Western Paper brought this action against Bilby for $6,924.60, the amount owed on his account. Bilby stipulated as to the amount due, but counterclaimed against Western Paper, alleging that the goods were nonconforming and further alleging breach of warranty of fitness for the intended purpose. At trial, the court entered judgment for Western Paper for $6,924.60, and for Bilby in the amount of $7,982.70. The court subsequently granted Bilby attorney's fees of $2,270.47. Western Paper has appealed.

Western Paper first argues that Bilby's evidence did not prove that the paper was nonconforming. It was undisputed that all the cartons delivered by Western Paper were sealed when delivered and marked with the red Starliner label. It was further uncontroverted that Bilby was working on only one job during this time. Bilby's testimony was that, when he examined the labels from Advance Chemical, at least ⅔ of them were printed on nonconforming paper with the wrong backing. Western Paper presented no evidence to dispute this. Al-

though Western Paper tried to show that the manufacturing process left no room for error in packaging the paper, the testimony did not conclusively establish this fact.

■ The credibility of witnesses and the effect and weight of their testimony is within the province of the trial court, as the trier of fact. *Snodgress v. Department of Public Safety*, 551 P.2d 259, 263 (Okla. 1976). It is neither the duty nor the province of this court to weigh the evidence in order to determine where the preponderance lies. *Harter Concrete Products v. Brookey*, 471 P.2d 908 (Okla.1970). In the instant case, the record contains sufficient evidence from which the court could determine that Western Paper supplied the improper paper for Bilby's order.

■ Western Paper further complains that Bilby cannot revoke acceptance after altering the paper. Western Paper cites 12A O.S.1981 § 2-608(2), for the rule that a buyer cannot revoke acceptance after "any substantial change in condition of the goods." Bilby does not dispute that the goods were altered to such a condition that they became worthless for any commercial purpose.

■ Generally, substantial alteration of the goods prevents a buyer from revoking acceptance. *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1106–7 (11th Cir.1983). *See also Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 47–48 (7th Cir.1980). Thus, we agree that after substantially changing the condition of the paper, Bilby could not revoke acceptance.

This conclusion, however, does not preclude Bilby from recovery of damages for breach of warranty. Title 12A O.S.1981 § 2-607(2), provides that although acceptance of the goods "precludes rejection" and may preclude revocation of acceptance, such "acceptance does not of itself impair any other remedy provided" for nonconforming goods. *See also Toyomenka (America), Inc. v. Combined Metals Corp.*, 139 Ill.App.3d 654, 487 N.E.2d 1172, 94 Ill.Dec. 295 (1985) (allowing damages for

breach of warranty after the goods had been accepted and substantially altered).

In the instant case, the goods were warranted as permanent adhesive type stock paper, evidenced by the color and content of the label on the box as well as the label which appeared inside the box on top of the paper. Western Paper was properly notified of the problems with the paper and offered no explanation. Although Bilby could have discovered the defect during printing, it is unreasonable to expect him to inspect every sheet of paper. The trial court committed no error in awarding Bilby judgment on the counterclaim.

Similarly, the court committed no error in calculating damages. The court awarded Bilby the cost of the paper for the second printing and his actual costs for the second printing. Although he testified that he had lost business because of the nonconforming goods, he was not awarded lost profits. Title 12A O.S.1981 § 2–712, allows the recovery of these damages.

Finally, 12 O.S.1981 § 936, provides for attorney's fees in actions both on open accounts and contracts for the sale of goods. In the instant case, Bilby was clearly the prevailing party, receiving a judgment of $1,058.10 over that of Western Paper. The claims were inexorably interrelated, arising from the same transaction, and not separate and distinct claims. The trial court committed no error in awarding attorney's fees. *See, e.g., Hicks v. Lloyd's General Insurance Agency, Inc.,* 763 P.2d 85, 86–7 (Okla.1988).

The court's judgment is supported by the law and the evidence. Accordingly, the judgment is affirmed.

BACON and RAPP, JJ., concur.