CURTIS COLLUM, JR., Plaintiff-Appellant, *v.* FRED TUCH BUICK *et al.*, Defendants-Appellees.

(No. 55466;

First District—June 20, 1972.

Milton K. Joseph, of Chicago, for appellant.

Coghlan and Joyce, of Chicago, (Martin D. Coghlan, of counsel,) for appellee Fred Tuch Buick.

Thomas J. Regan, and Thomas D. Nyhan, both of Chicago, (Pope, Ballard, Kennedy, Shepard & Fowle, of counsel,) for appellee Buick Motors Div., General Motors Corp.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This action is brought by plaintiff to recover the price of a new automobile which he had purchased from the defendant, Fred Tuch Buick, agent for the manufacturer. The cause was tried by the court without a jury, and at the close of plaintiff's case, pursuant to defendant's motion, the court entered judgment for defendants. Plaintiff appeals, contending that:

(1) he was given an implied warranty by the dealer that the car was fit for use;

(2) the car was not fit for use, and he properly revoked the purchase, returned the automobile to defendant and brought this action against the dealer for the purchase price;

(3) the manufacturer breached the express warranty delivered to him at time of purchase; and

(4) the trial court erred in granting the defendant's motion for judgment.

The facts follow.

In March 1965, plaintiff purchased a new Buick automobile from defendant-agent Tuch Buick for approximately $4,000, paying $2,200 from his own funds and $1,800 from the proceeds of a bank loan. The automobile was manufactured by defendant General Motors who sold it to Tuch for resale to plaintiff. At the time of the sale, plaintiff was given a new car warranty which guaranteed the car to be free from defects in material or workmanship for 24 months, or 24,000 miles of driving, whichever occurred first.

Plaintiff testified that he took delivery of the car on April 2, 1965; that the next morning, after driving a short distance, the hot motor indicator lit up, and he heard a "squeaky" noise in the motor, which grew louder as the speed increased. Plaintiff took the car to Tuch that day and told the service manager it was running hot and the engine was squeaking. The service manager told him to wait until the 1,000-mile checkup was due and then bring the car in for servicing.

Three or four days later plaintiff noticed that the hot indicator stayed on for about an hour after the car was started, then went off and on periodically. He also testified that the car sounded like a wind tunnel when it was driven over 60 miles an hour and made a bumping noise when a right turn was made.

Plaintiff further testified that when he brought the car to the dealer for the 1,000-mile checkup he told the service manager in detail about the various problems he had had with the car. He was told that all of the complaints would be checked, but when he picked the car up three days later, according to his testimony, none of the complaints had been remedied. He again brought the car to the dealer in May and told the service manager he was still having the same problems as before, and was told to leave the car for a week, as the engine might need a short block. On May 24, plaintiff returned to pick up the car and was told that a short block had been put in. When plaintiff told the dealer he was going to drive to Indianapolis he was told to get the car up to high speed—100 to 110 miles per hour—and blow some carbon out of the engine. Plaintiff testified that he was informed that all the complaints had been corrected.

On May 27, 1965, plaintiff drove to Indianapolis; he got the car up to high speed [over 100 miles per hour], and when he arrived in Indianapolis and turned off the motor it continued to run for 20 to 30 minutes and was shaking and vibrating. Plaintiff testified that when he started the car the following day the heat indicator light came on, the motor started squeaking and made a bumping noise when the car was turned right. He stated that on the way back from Indianapolis to Chicago the car made these various sounds and that of a wind tunnel, and that when he pulled to the side of the road he saw smoke coming from the exhaust.

Plaintiff returned the car to the dealer on June 2 or 3, and told the service manager that none of his complaints had been remedied. He was informed that the dealer was busy and could not look at the car at that time; he was told to drive only in the City at a speed not exceeding 40 miles an hour, and to bring the car back. He took it back on June 6, 1965. When plaintiff returned to the dealer's place on June 22, the

service manager went with him for a test drive at a speed of 75 miles an hour. Plaintiff stated the service manager agreed that the car sounded like a wind tunnel and was vibrating noisily. Plaintiff further testified that the service manager said he would have General Motors engineers look at the car because he could not correct the difficulty.

Plaintiff picked up the car on July 3 for use on the 4th and returned it to the dealer on the morning of July 6. He stated he told the service manager he should have a new car or a new motor; that the service manager and his assistant told plaintiff he had a "lemon" and should be given a new car, but that he would have to talk to Tuch about that.

Plaintiff testified that on July 28, 1965, he again noticed the red light indicating the hot motor, and noticed that the car was making noises. He also discovered, after stopping at a service station, that there was no oil in the car. At the same time he saw smoke coming from the exhaust and something caught fire, which the attendant quickly extinguished. Plaintiff testified he thought it was the transmission that was on fire, but it was brought out on cross examination that he was not sure the transmission was actually on fire, but that the fire was around the transmission.

On July 31, 1965, plaintiff returned the car to the dealer and explained that it had caught fire and that he was continuing to experience all the problems he had previously told them about. The service manager then put the car on the rack to check it, and told plaintiff there was no oil filter in the car, that apparently someone had forgotten to put one in when it was last serviced. Plaintiff then told the service manager that he was leaving the car, the keys, and the license, and that he would not be back to pick it up.

On August 2, 1965, plaintiffs attorney wrote the dealer, advising that he was revoking plaintiffs acceptance of the car, and demanded reimbursement of $4,435, the price of the car plus repairs and insurance premiums. Plaintiff later received a letter from the dealer advising that the car was checked, tested and ready to be driven. Plaintiff did not return to the dealer, and kept in his possession the certificate of title to the car.

On cross-examination plaintiff admitted that he did not know if the items covered by the warranty had been remedied, and no evidence was introduced to show that the difficulties plaintiff testified to were in any way caused by or related to defects in material or workmanship. He also admitted that he was not qualified to give any opinion on what caused the problems; that he never investigated the cause of the noise he heard when making a right turn; and that he never had to add

water to the radiator despite the fact that the hot motor indicator light was on.

At the close of plaintiffs case, the defendants joined in a motion for judgment. The court entered judgment for both, stating that plaintiff failed in his burden of proof. We proceed to a consideration of plaintiff's contentions that there was a breach of warranty by the dealer, Fred Tuch Buick. Plaintiff contends that under the provisions of the Illinois Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 2—314), the dealer gave plaintiff an implied warranty of the merchantability of the automobile which included the assurance that the car was fit for the ordinary use intended. Plaintiff contends that his testimony proved a breach of this implied warranty which gave rise to plaintiff's right to revoke his acceptance of the car under the provisions of the Commercial Code (Ill. Rev. Stat. 1965, ch. 26, par. 2—608). Plaintiff further reasons that under section 2—711 of that Code, he, as a buyer who had rightfully revoked his acceptance, has an action against the seller for the purchase price of the article.

■■ A buyer of a defective automobile may on a proper showing recover the purchase price from the seller for breach of the implied warranty of merchantability. (*Appleman v. Fabert Motors, Inc.*, 30 Ill.App. 2d 424.) However, the right to revoke acceptance of an automobile does not arise from every breach of warranty. That provision in section 2—608 of the Commercial Code is as follows:

"*Revocation of Acceptance in Whole or in Part.*

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured;"

To revoke acceptance the defect must substantially impair the value of the car to the plaintiff. Each case must be carefully examined on its own merits to determine what is a substantial impairment of value. *Tiger Motor Company v. McMurtry* (Ala. 1969), 224 So.2d 638.

■■ In the instant case the plaintiff was the only witness who testified to the defects in the car, and his testimony shows no evidence that he at any time examined the car to determine what, if anything, was wrong with it. Plaintiff admitted he was not qualified to give an opinion concerning the trouble, and his testimony shows that the most serious problem— the fire—was not caused by a defect, but merely the oversight of a service man who failed to replace an oil filter. Plaintiff also admitted that he never had to add water to the car even though it appeared to be running

hot. His credibility was for the trier of fact to determine, and it is our opinion that the trial court properly found that plaintiff failed to prove a breach of the implied warranty of merchantability.

Plaintiff also contends that General Motors breached its express warranty that the car would be free from defects in material or workmanship. The new car warranty given to plaintiff recites that it is limited to repairing or replacing, at the option of the manufacturer, any part or parts which are defective. In order to recover on a theory of breach of express warranty, the plaintiff must prove that the alleged malfunctioning of the car was caused by a defect in the parts or workmanship, and that the manufacturer failed to repair or replace the parts in accordance with the warranty.

■■ Plaintiff did not prove a failure to service the car according to the terms of the warranty, or to correct any of the alleged defects. Each time the plaintiff took the car to the dealer for servicing under the warranty agreement, the service was performed at no cost to plaintiff. The evidence does not prove that the alleged malfunctioning resulted from defective parts or workmanship. The only evidence as to such malfunctions is plaintiff's testimony that the car made noises, that an indicator light was on, and that the car caught fire. The fire was explained as not due to a defect, and the mere fact that the car made noises or that a certain light was on is not proof that these difficulties were caused by defects in material or workmanship.

■■ Plaintiff cannot rely on the doctrine of *res ipsa loquitur* to sustain his burden of proof in a case such as this. (*Haas v. Buick Motor Division*, 20 Ill.App.2d 448.) No evidence was introduced or offered which proves that the malfunctioning of the car was caused by defects in material or workmanship. No mechanic or other expert witness was called to testify to the alleged defects. The trial court properly entered judgment for defendant General Motors.

Plaintiff finally contends that the trial court erred in granting both defendants' motions for judgment at the close of his case. He argues that when a motion for judgment is made by a defendant at the close of plaintiff's case, the judge, in ruling on the motion, must construe the evidence in a light most favorable to the plaintiff. He argues that the evidence, when so construed, supports his allegations.

■■ The Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 64 (5) ) provides that when a judge sitting without a jury rules on a motion made by defendant for judgment at the close of plaintiff's case, he must weigh the evidence. This court will not disturb his ruling unless it is manifestly erroneous. (*Bilyeu v. Plant*, 75 Ill.App.2d 109.) The trial court in the

instant case weighed the evidence and found that plaintiff failed to sustain his case. He did not present evidence which proved what was wrong with the car. He presented the difficulties he had with it. There was ample basis for the trial court's ruling.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.