MELVIN STAMM, Plaintiff-Appellee, *v.* WILDER TRAVEL TRAILERS, Defendant-Appellant.

Fifth District   No. 75-541

Opinion filed December 16, 1976.

---

G. MORAN, J., dissenting.

Kassly, Weihl, Bone, Becker & Carlson, of Belleville, for appellant.

Thomas H. Kuergeleis, of Crowder & Associates, Ltd., of Columbia, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Melvin Stamm brought an action against defendant, Wilder Travel Trailers, to recover compensatory and punitive damages for an alleged breach of express and implied warranties and fraudulent misrepresentation in the sale to him of a travel trailer. The court, sitting without a jury, entered judgment for plaintiff and granted compensatory damages of $1,946.50, the full purchase price of the trailer, and punitive damages of $1,500. Defendant appeals from this judgment, alleging that plaintiff did not establish a breach of either express or implied warranties. Defendant further alleges that compensatory damages equivalent to the full purchase price of the trailer was not warranted by the evidence and that an award of punitive damages was improper. Although the trailer was purchased and this suit was filed in 1971, the final order in the trial court was not entered until November 1975.

The facts are as follows. Mr. Stamm and his wife, after seeing a

newspaper advertisement placed by Wilder which announced a sale of 1970 model travel trailers, went to Wilder's sales lot in East St. Louis on Wednesday, March 10, 1971. They were waited on by the salesman, a Mr. Goad. Mr. and Mrs. Stamm spent at least an hour looking at the trailer which they ultimately purchased. Mr. Goad testified that he spent half a day with the couple. There is a dispute as to what was actually said by the salesman in relation to the year model of the trailer. The plaintiff and his wife testified that Mr. Goad referred to the trailer as "last year's model." He testified that he informed both the Stamms that the trailer was a 1969 model. They left a deposit of $20 and returned the following Saturday to pick up the trailer. As part of the sale closing a "customer purchase order" or bill of sale was filled out by Mr. Goad and signed by Mr. Stamm. This document identified the trailer as a 1969 model in large, conspicuous hand-printed numerals. Mr. Stamm testified that there were several customers standing about and that some commotion was caused by a spilled cup of coffee so that he signed the paper without reading it. He then took the trailer home.

In a week to 10 days Mr. Stamm went out to the trailer to clean it up and ready it for use. He discovered that a cross member in a drawer was broken so that the drawer would not support a heavy weight. About a week later he filled up the water reservoir tank which leaked onto the floor of the trailer. Mr. Stamm turned on the furnace in the trailer but the gas bottle was empty so he assumed that the gas had leaked out. He noticed that some screws holding a bracket meant to support a bunk bed were sheared off and some screws were missing from the metal moulding around the couch. He also looked under the trailer and noticed the gas line and electrical wires hanging down and assumed that the brackets for holding the line and wires were missing. One of the bulbs in the external clearance lights did not work. The roof coating applied as a yearly "winterizing" measure was peeling. The wooden ceiling strips were "kind of loose." The door opened and closed hard. He also noticed that a missing full length mirror and a cracked light globe which he discussed with Mr. Goad the day he had inspected the trailer had not been replaced. He also found in the trailer a bottle of septic tank fluid and charcoal starter.

Mr. Stamm testified that he never attempted to repair these defects himself, never had the trailer inspected to determine if his assumptions concerning the need for repairs was correct,. nor did he ever arrange for an estimate as to the cost of repairs or the time needed to effect them. Mr. Goad testified, as one who had worked on trailers himself and who had authorized others to make repairs, that the defects described by Mr. Stamm would take an hour and approximately $10 to remedy.

Plaintiff contacted Wilder Travel Trailers concerning the defects and

was told that they would be corrected if he would bring the trailer in. Mr. Stamm testified that he did not return the trailer for repairs because he had no insurance or license for it. Mr. Goad testified that Mr. Stamm brought the trailer by once and asked him to have it repaired that day. Mr. Goad told plaintiff that he did not have time to do the repairs that day and asked that the trailer be left "for a couple of days" so he could get the work done. The "customer purchase order" specifically provided: "Before warranty work can be performed, trailer must be brought back to sales lot." It is undisputed that the trailer has never been repaired and is still in the possession of plaintiff, having been stored on his premises since it was purchased and never used.

Plaintiff alleged in his complaint and attempted to prove at trial that the defendant breached an express warranty that the trailer purchased was an unused, like-new, 1970 model travel trailer. A provision of the Illinois Commerical Code (Ill. Rev. Stat., ch. 26, par. 2—313) requires that an express warranty be created by a "affirmation of fact or promise" or "description of the goods which is made part of the basis of the bargain."

The first question we consider is whether an express warranty was created in the transaction under consideration. The second is whether plaintiff's evidence established that a breach occurred if an express warranty is found to exist. Plaintiff alleges the existence and breach of a three-pronged warranty. That is, that the trailer was new, was unused and was a 1970 model. After consideration of the evidence, we are of the opinion that an express warranty was present as to the first two elements but that a breach was not proved. As to the third element, the existence of an express warranty was not proved.

■■ There is no conflict in the evidence that the plaintiff was told and believed that he was buying a new, unused travel trailer. This is sufficient to establish an express warranty. With regard to the breach of the warranty, plaintiff's brief specifically disavows any intent to rely on the presence of the alleged defects as evidence that the trailer was other than new. He relies solely on the fact of an admitted two-day use of the trailer by a salesman as a demonstration model to establish that the trailer was "used." The evidence adduced on this issue is not in dispute. Plaintiff testified that he found in the trailer a can of charcoal starter and a bottle of chemicals used for the septic tank. When he inquired of Mr. Goad as to why these items were in a trailer which had been represented as new he was told that a salesman had used it "for a couple of days." Mr. Goad testified that the trailer had been used as a demonstration model at a park for a two-day period. We are of the opinion that such a use is not sufficient to reduce the status of the trailer to that of "used."

■■ As to the third element of the alleged express warranty, that the trailer was a 1970 model, we consider that the existence of a warranty was

not established. The language of the statute requires that the "affirmation of fact or promise" or description of the goods be "part of the basis of the bargain," before an express warranty is created. Early cases under the Sales Act, which preceded the Uniform Commercial Code, interpreting similar language, and cases under the present day Uniform Commercial Code (Ill. Rev. Stat., ch. 26, par. 1—101 *et seq.*) require a reliance by the buyer upon the promise, affirmation or description. (See *Beckett v. F.W. Woolworth Co.*, 376 Ill. 470, 34 N.E.2d 427; *Keller v. Flynn*, 346 Ill. App. 499, 105 N.E.2d 532; *Capital Equipment, Inc. v. North Pier Terminal Co.*, 117 Ill. App. 2d 264, 254 N.E.2d 542.) In the instant case no direct evidence was presented on the issue of reliance. Plaintiff and his wife did testify that they went to defendant's lot after seeing a newspaper advertisement announcing · a sale of 1970 model travel trailers. This advertisement indicated a sale of "1970 units" including Aristocrat, Mobile Traveler, Utopia, Bonanza, and Duke brands. The trailer which plaintiff purchased was a Duke. To infer from the fact of viewing a sales advertisement that the plaintiff had thereupon made up his mind to purchase a 1970 model trailer and no other is too great an assumption to make, especially in view of the fact of the personal inspection made by the plaintiff. Plaintiff never testified that at the time of the sale he relied upon a belief that the trailer was a 1970 model. In view of this lack of evidence on the issue of reliance, it is of no consequence that the evidence is in dispute as to whether such a representation was ever in fact made. The same is true concerning the evidence of the year of the trailer's manufacture. There was no evidence presented upon which the existence of an express warranty concerning the model year of the trailer could be predicated.

■■ Defendant argues also that plaintiff failed to prove a breach of an implied warranty of merchantibility dealt with in section 2—314 of the Illinois Commercial Code. (Ill. Rev. Stat., ch. 26, par. 2—314.) Breach of an implied warranty of merchantability, that is, that the trailer was not fit for the ordinary use intended, would give rise to a right to revoke acceptance under the provisions of section 2—608 of the Code. (Ill. Rev. Stat., ch. 26, par. 2—608.) The purchaser of a defective item may on a proper showing recover the purchase price for breach of the implied warranty of merchantability. (*Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317, 285 N.E.2d 532.) However, in order for the right to revoke acceptance to arise such defects must exist as "substantially impair the value" of the item. *Collum v. Fred Tuch Buick.*

■■ Plaintiff argues that he did not, in fact, accept the trailer and that the "substantial impairment. of value" standard does not apply. We disagree. Section 2—606 of the Uniform Commercial Code provides that acceptance takes place when the buyer fails to reject after a reasonable

opportunity to inspect. (Ill. Rev. Stat., ch. 26, par. 2—606.) The only alleged defects which would not have been apparent in a reasonable inspection merely by looking are the alleged leak in the gas line and in the water tank. However, whether or not there are actual leaks as opposed to the improper use of these appliances has not been established. The trailer has never been, according to the testimony of plaintiff, examined by anyone qualified to give an opinion as to the existence, source or extent of the defects. Plaintiff did not even himself closely examine the trailer to determine the source or extent of the defects. Finally, there is the testimony of the plaintiff that "I planned to go on a trip even though all the things were wrong with the trailer because I figured defendant would not give my money back." The plaintiff's obvious assessment of the situation was that he had accepted the trailer.

Plaintiff cites *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 292 N.E.2d 168, for the proposition that once a buyer's faith has been shaken in a major investment, such as a travel trailer, its value is substantially impaired. We agree. However, in that case, a car transmission fell out on the Eisenhower expressway the morning after it was purchased. A week after the repairs had been made following this incident the brakes went out on the expressway. The court found that the defendant was justified in revoking his acceptance. In other cases which found justifiable revocation the transmission of a car could be driven only in low gear (*Zabriskie Chevrolet, Inc. v. Smith* (1968), 99 N. J. Super. 441, 240 A.2d 195) and a new car was returned more than 30 times in the first year for repairs (*Tiger Motor Co. v. McMurtry* (1969), 284 Ala. 283, 224 So. 2d 638). In *Collum v. Fred Tuch Buick* a new car "sounded like a wind tunnel when driven over 60 miles an hour," made a bumping noise when a right turn was made, had a squeaky noise in the motor, the hot engine indicator stayed on and one occasion continued to run for 20 to 30 minutes after the key was turned off. These defects were held not to be a substantial impairment so as to justify a revocation of acceptance.

Plaintiff cites the *Overland* case also for the proposition that the dollar value of repairs need not be compared to the overall price of the article to determine whether the impairment of value is substantial; rather, courts must look to the effect the impairment has on the user. Therefore, plaintiff argues, the fact that the cost of repairs to the trailer may be small does not justify a finding that the impairment is not substantial. However, applying that standard in the instant case it is obvious that the effect of the defects on the plaintiff was, by his own testimony, minimal, since he planned to use the trailer, *i.e.*, take it on a trip, in spite of the defects.

■■ Comparing the defects in the instant case with those of the cases discussed we think it evident that substantial impairment of value has not been established and the plaintiff was not, therefore, justified in revoking

his acceptance under section 2—606 of the Uniform Commercial Code. (Ill. Rev. Stat., ch. 26, par. 2—606.) It is not necessary, therefore, to consider the defendant's remaining arguments concerning the award of damages. The judgment of the trial court is reversed.

Reversed.

CARTER, P. J., concurs.

G. J. MORAN, J., dissents.