**The AFA CORPORATION, a Florida Corporation, Plaintiff,**

v.

**PHOENIX CLOSURES, INC., a New York Corporation et al., Defendants.**

**No. 77 C 4126.**

United States District Court, N. D. Illinois, E. D.

Nov. 6, 1980.

Richard F. Hudzik, Maurice J. Moriarty, Moriarty, Hultquist, McDevitt & Howlett, Ltd., Chicago, Ill., for plaintiff.

Jay S. Nelson, Schaffenegger, Watson & Peterson, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

AFA Corporation ("AFA") brings this diversity action against Phoenix Closures, Inc. ("Phoenix") and Selig Sealing Products, Inc. ("Selig"),[1] claiming that in 1975 Phoenix and Selig sold AFA defective liquor bottle cap liners to be inserted into bottle caps manufactured by AFA for its customers. AFA's original Complaint was brought solely against Phoenix. That action was tried to a jury, but at the close of AFA's case the court granted a directed verdict in favor of Phoenix on each count of the four–count complaint. That judgment was reversed by our Court of Appeals, which determined that many erroneous evi-

---

1. Selig was added as a defendant in AFA's Amended Complaint. Phoenix and Selig are closely related, having identical officers and directors except for one individual, and being under common controlling ownership. They admit that orders received by one company may be filled by the other.

dentiary rulings had made it impossible for AFA to prove its case.[2]

AFA has now moved for entry of summary judgment on each of the four alternative counts of its Amended Complaint against Phoenix and Selig: Count I claiming an account stated, Count II claiming a settled account, Count III claiming breach of express warranty and Count IV claiming breach of implied warranties. For the reasons stated in this memorandum opinion and order, summary judgment is entered in favor of AFA and against Phoenix and Selig jointly and severally on the grounds relied on in Counts III and IV.

### The Facts[3]

AFA is a manufacturer of plastic materials, including bottle caps sold principally to three distilleries (James B. Beam Distilling Company, Hiram Walker & Sons and American Distilling Company, Inc.). Phoenix and Selig are manufacturers and suppliers of liners and liner materials for such bottle caps, their cardboard or pulp liners covered with a thin plastic film being inserted into the interior of AFA's plastic bottle caps to seal off the contents of the liquor bottles.

For many years through late 1975 AFA purchased all of its bottle cap liners and liner materials from Phoenix or Selig on open account. In the latter part of 1975 AFA received numerous complaints from its distillery customers concerning staining and leakage problems with the liners. AFA immediately notified Phoenix of the reported defects. Phoenix requested samples of the closures and lining materials and was supplied such samples from AFA's inventory and from AFA's customers. Phoenix's own laboratory tests of the returned liners and lining materials originally supplied by Phoenix and Selig confirmed the defects. All of the plastic bottle caps suspected of containing defective lining materials were returned at Phoenix's request and expense to a Chicago warehouse,[4] where Phoenix inspected and inventoried the defective merchandise. Phoenix and Selig have paid all storage charges to the warehouse.

Phoenix's own physical inventory of the returned plastic bottle caps was contained in a September 10, 1976 letter from its Vice President–Sales Baumgartner to AFA. That letter confirmed an aggregate of 2,839,700 Vinylite lined caps and 25,203,000 Lasan lined caps, totalling the 28,042,700 bottle caps that form the subject matter of AFA's Complaint.[5]

2. Unpublished order reported at 594 F.2d 866 (7th Cir. 1979). In its order the Court of Appeals stated, "Also, we cannot escape the conclusion that many of these errors were induced and encouraged by the conduct of the defense." It also taxed all costs incurred to that date, both in the trial court and in the Court of Appeals, against defendant.

3. All the facts stated in this section are based on admissions in the Answer, on affidavits and on defendants' discovery admissions. Where Phoenix and Selig have sought to controvert any factual issue, the dispute will be identified specifically.

4. Phoenix and Selig seek to raise a factual issue as to whether they authorized the return of the bottle caps, claiming that there was no agreement to that effect. Their memorandum describes Paul Baumgartner, to whom AFA's Manager wrote a December 12, 1975 letter confirming such agreement, as the "sales manager" and states at page 3:

He was a salesman whose concern was to service customers in order to maintain sales. It was his business to assist customers whenever possible.

In 1975, AFA approached him about a problem with some bottle caps that AFA had sold to three distilleries. In the spirit of a salesman servicing customers, he attempted to assist. His primary concern was to keep the distilleries happy.

In fact Baumgartner was Vice–President–Sales of Phoenix and an officer–director of Selig, and defendants' lawyers' description is a lame and inaccurate characterization of the understandings described in the letter. Though the Phoenix–Selig position is at best disingenuous, in light of the fact that their subsequent conduct was wholly in conformity with the letter to Baumgartner, this Court need not (as it cannot on a summary judgment motion) resolve that issue. In the view taken by the Court, because it does not base its decision on the account stated or agreement theories of Counts I and II, the legal consequences are identical whether or not such an agreement was reached, and the issue thus does not relate to a material fact.

5. Here Phoenix and Selig engage in an effort to create factual issues that it would be charitable to describe as disingenuous. First they argue

Although footnotes 4 and 5 have adverted in less than flattering terms to the efforts of Phoenix and Selig, through their counsel, to raise factual issues in opposition to summary judgment, the most egregious of these relates to the attempt to construct such an issue regarding the source of the defective materials. As already stated, Phoenix and Selig had long been AFA's sole supplier for cap liners and lining materials. In October 1975 AFA for the first time placed orders for such materials with 3–M Company, and defendants' counsel seeks to interpose a claimed inconsistency between the deposition testimony of AFA's personnel and their affidavits identifying Phoenix and Selig as the sole source of the defective materials.

But they can do so only by a *selective* treatment of the deposition of AFA's plant manager Dunn. Reference to a Dunn deposition page (in fact, the *very next page*) omitted by them makes it plain that the materials *ordered* from 3–M beginning in October 1975 were not (and could not have been) delivered to AFA and incorporated into its deliveries to its customers until substantially *after* AFA had received from Phoenix and Selig all of the defective materials that gave rise to the customer complaints and were thereafter returned to Phoenix.[6] Moreover, counsel have persisted

in their efforts to characterize Dunn's testimony as "contrary to his affidavit," as creating a conflict "enough to raise a genuine issue of material fact and preclude summary judgment" and to "place Dunn's veracity in doubt"—even though the actual situation is obvious from reading the documents and has been specifically addressed by AFA in responding to defendants' motion to strike the affidavits of Dunn and AFA sales manager Miller. This can only be viewed as a continuation and extension of the conduct criticized by the Court of Appeals in its earlier reversal of the directed verdict for Phoenix.

Returning to the true issues in the case, the Court finds it uncontroverted that AFA has invoiced Phoenix for the bottle caps returned by AFA and its customers that are still in the possession of Phoenix and Selig. Those invoices, dated from March 1, 1976 to October 29, 1976, total $163,848.42. Phoenix and Selig have not paid the invoices although repeatedly requested to do so.

### Counts I and II—Account Stated and Settled Account

■ This Court will not pause long on the first two counts, grounded on "account stated" and "settled account" theories. Each depends essentially on the concept of

---

that there has been no showing of how many of the caps were lined with Lasan and how many with Vinylite. That claim is belied by their own letter. Moreover, that too would not raise an issue of *material* fact, given the undisputed fact that *each* material contained defects. As stated at page 2 of their own memorandum:

> There are at least three different defects involved in this case. Some of the Lasan coating contained pinholes which permitted liquor to leak into the backing which caused staining and leaking. Some of the Vinylite material had a backing that separated or delaminated, and some of the Vinylite had a wax coating that dropped into the liquor.

Next they deny that all 28,040,700 bottle caps are still in their custody in Forest, Illinois. But in response to AFA's interrogatory on the subject, they stated in 1980 that the closures were in a warehouse in Forest and that the number there is "unknown." It is undisputed that none of the caps has been returned to AFA. Again no issue of material fact is raised by defendants' evasive tactics.

**6.** As to the defective Vinylite lining materials, Phoenix and Selig also seek to rely on a test performed for them by Colburn Laboratories, Inc., consulting chemists, on October 26, 1976. Colburn concluded that "[t]he contaminant contains one or more substances which are not present in the materials you [defendants] submitted as knowns." Its report stated that three "known" materials had been submitted by Phoenix. But there is nothing in the report or in any other documents proffered by defendants to establish that the three "known" materials were exhaustive of the Vinylite supplied to AFA by defendants. Moreover, the report itself states that the "presence [of two of the 'known' materials] as part of the contaminant cannot be ruled out." In light of the unquestionable fact that Phoenix and Selig were the *sole* suppliers of Vinylite materials to AFA during the period in suit, the test is clearly insufficient to raise a genuine issue as to any material fact that could negate defendants' liability for the defective Vinylite lining materials.

an *agreed* liability, and as already noted in footnote 4 Phoenix and Selig dispute the existence of an agreement. Because of defendants' clear liability under Counts III and IV, this Court will not analyze the materiality (or lack of it) of the disputed matter.

### Count III–Express Warranty

Amended Complaint Count III alleges breach of an express warranty that the liners and lining materials supplied by Phoenix and Selig would conform to various representations made and samples provided to AFA. Section 2–313 of the Illinois adoption of the Uniform Commercial Code ("Code"), Ill.Rev.Stat. ch. 26, § 2–313, provides:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the samples or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Official Comment 3 to that section provides in part:

The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract as dealt with. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement...

AFA's claim is based on uncontroverted facts: Before AFA purchased the lining materials, defendants supplied AFA with technical specifications covering the products. Those specifications were contained in bulletins published by defendants in which defendants suggested both Lasan and Vinylite liners for use on liquor bottles. Samples of the liners were also included. AFA relied on defendants' representations regarding the liners and lining materials. However, the products actually supplied did not conform to the representations made in defendants' bulletins or to the samples provided. It is therefore AFA's position that by supplying AFA with defective liners and materials, defendants breached their express warranty of conformance with the specifications and the samples.

■ Phoenix and Selig deny that their bulletin and samples constituted express warranties that the liners they supplied AFA would be in accordance with the representations and samples supplied AFA. But their denial is clearly contrary to the express provisions of Code § 2–313 and supporting case law. Documents and brochures containing statements and samples constitute express warranties. *Alafoss, h. f. v. Premium Corp. of America, Inc.*, 448 F.Supp. 95, 98–99 (D.Minn.1978); *Drayton v. Jiffee Chemical Co.*, 395 F.Supp. 1081, 1093–94 (N.D.Ohio 1975); *Harris v. Belton*, 65 Cal.Rptr. 808, 814, 258 Cal.App.2d 595 (1968).

■ On April 16, 1980 Judge Decker of this Court struck the affirmative defense Phoenix and Selig sought to interpose based on the alleged disclaimer of warranties and

limitations of liability in the "Order Acknowledgement" with which they responded to each AFA purchase order. This Court not only concurs in that ruling but also holds the same defense unavailable against the *implied* warranties discussed in the next section of this opinion, for the same reasons that are stated by Judge Decker and are applicable to such implied warranties.

Accordingly, AFA is entitled to a summary judgment on the issue of liability on Amended Complaint Count III. Before turning to the question of damages, however, this opinion will also review Count IV's claim in summary judgment terms.

*Count IV–Implied Warranties*

1. *Implied Warranty of Merchantability*

· Amended Complaint Count IV asserts defendants' breach of the implied warranty of merchantability, as to which Code § 2–314 provides:

(1) Unless excluded or modified (§ 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind . . .

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and

(b) are fit for the ordinary purposes for which such goods are used . . .

Official Comment 8 to that section is particularly relevant:

Fitness for the ordinary purposes for which goods of the type are used is a fundamental concept of the present section and is covered in paragraph (c). As stated above, merchantability is also a part of the obligation owing to the purchaser for use. Correspondingly, protection, under this aspect of the warranty, of the person buying for resale to the ultimate consumer is equally necessary, and merchantable goods must therefore be 'honestly' resalable in the normal course of business because they are what they purport to be.

Under Code § 2–314(2)(b) every agreement for the sale of goods includes such an implied warranty of fitness for the ordinary purposes for which they are used. *Soft Water Service, Inc. v. M. Suson Enterprises, Inc.*, 39 Ill.App.3d 1035, 1042, 351 N.E.2d 264, 270 (1976); *Burrus v. Itek Corp.*, 46 Ill.App.3d 350, 354–55, 4 Ill.Dec. 793, 795–796, 360 N.E.2d 1168, 1170–71 (1977). It is clear that such implied warranty of merchantability was breached by Phoenix and Selig:

First, they are "merchants" within the meaning of Code § 2–314 because they are persons who, in professional status, sell a particular kind of goods giving rise to a warranty. *Siemen v. Alden*, 34 Ill.App.3d 961, 964, 341 N.E.2d 713, 715 (1975). Second, the purpose for which AFA used the liners and liner materials was in fact their *ordinary* purpose. Finally, Phoenix and Selig admit that their products caused leakage and staining and that AFA's customers rejected their product.

2. *Implied Warranty of Fitness For a Particular Purpose*

Code § 2–315 defines the implied warranty of fitness for a particular purpose:

Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

To recover for breach of that implied warranty, a plaintiff must show that (a) it made known to the seller the purposes for which the article was purchased, (b) the buyer relied on the seller's skill and judgment, (c) there was some defect in the article sold that rendered it unfit for that purpose and (d) damage resulted from the defect. *Van Winkle v. Firestone Tire & Rubber Co.*, 117 Ill.App.2d 324, 328, 253 N.E.2d 588, 590 (1969); *Knab v. Alden's Irving Park, Inc.*, 49 Ill.App.2d 371, 379, 199 N.E.2d 815, 820 (1964).

■ Simply to recite those elements plainly confirms defendants' breach: First, Phoenix and Selig of course knew the specific purpose for which AFA intended to use the materials. Second, the affidavits of AFA's sales managers establish that AFA relied on defendants' representations in their own bulletins that the materials sold to AFA would be suitable as liquor closures. Third, there is no question that the Phoenix–Selig products were unfit for use in liquor closures. Finally, AFA plainly suffered damage as a result.

Thus AFA is entitled to a summary judgment on the issue of liability on Amended Complaint Count IV as an alternative to Count III. We therefore proceed to examine the question of AFA's damages under either Count.

### AFA's Damages

Code § 2–714(2) states the measure of damages for breach of warranty:

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

Simply put, the value of the materials in the closures returned to Phoenix and Selig by AFA and its customers is zero. Their value as warranted was their market price— their cost. Code § 2–715(1) permits recovery of shipping and handling expenses incurred in returning the goods to Phoenix and Selig. AFA has shown that the cost of the materials plus such expenses amounted to $163,848.42. Thus AFA's damages totalling $163,848.42 are properly recoverable under the applicable Code provisions.

Phoenix and Selig argue that AFA is not entitled to that full amount because it includes the cost of Lasan caps returned because they were merely suspect. Phoenix and Selig contend that AFA is entitled to damages only for actually defective materials.

It would of course be absurd to apply such a doctrine to the 28 million bottle caps here. Can defendants seriously expect AFA's customers to use the closures to see whether any of them are non–defective?

■ As might be expected, the law parallels the common–sense answer. Breach of either an express or any implied warranty that "substantially impairs [the] value" of a lot of goods gives rise to a right to revoke acceptance under Code § 2–608:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose non–conformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its non–conformity would be cured and it has not been seasonably cured; or (b) without discovery of such non–conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

*Stamm v. Wilder Trailers*, 44 Ill.App.3d 530, 534–35, 3 Ill.Dec. 215, 218, 358 N.E.2d 382, 385 (1976) (implied warranty of merchantability), *Collum v. Fred Tuch Buick*, 6 Ill. App.3d 317, 321, 285 N.E.2d 532, 535 (1972) (express warranty).

■ It cannot be gainsaid that the major incidence of defective lining materials substantially impaired the value of the entire lots purchased from Phoenix and Selig. AFA was therefore entitled to revoke its acceptance of the entire quantity of lining materials, including caps suspected of containing defective lining materials. AFA must recover the entire $163,848.42.

*Conclusion*

There is no genuine issue as to any material fact, and AFA is entitled to a judgment against Phoenix and Selig, jointly and severally, in the amount of $163,848.42 as a matter of law. In view of the manner in which defendants and their attorneys have conducted this litigation, both in the respects adverted to in the prior Court of Appeals opinion and since then in apparently "stonewalling" by interposing defenses before this Court that they must have known to be non–meritorious, on or before November 21 the parties are hereby directed to submit to the Court memoranda directed to the propriety of the following sanctions:

(1) pre–judgment interest or other relief to compensate AFA for the lengthy deprivation of the amount to which it has been entitled; and

(2) award against Phoenix and Selig or its attorneys (see *Roadway Express, Inc. v. Piper*, —— U.S. ——, —— ——, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980)), or both, of AFA's attorney's fees;

and the proper measure of any such sanctions.

Summary judgment in favor of AFA and against Phoenix and Selig still leaves pending the latters' third party complaint. Counsel for Phoenix and Selig and for the third–party defendant are directed to appear for a status report at 9:30 a. m. November 25, 1980.