7 July 1999

No. 2--98--0948

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

EDWARD BELFOUR AND RITA BELFOUR, ) Appeal from the Circuit

) Court of Du Page County.

Plaintiffs-Appellants and )

Cross-Appellees, )

) 

v. ) No. 98--L--287

)

SCHAUMBURG AUTO, VOLKSWAGEN OF ) 

AMERICA, INC., and VOLKSWAGEN ) 

CREDIT, INC., )

)

Defendants-Appellees and )

Cross-Appellants )

) Honorable

(Lehrer, Flaherty and Canavan, ) Richard A. Lucas,

Appellant). ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Plaintiffs, Edward and Rita Belfour, appeal the judgment of the trial court of Du Page County granting summary judgment in favor of defendants, Schaumburg Auto (dealership), Volkswagen of America, Inc. (Audi), and Volkswagen Credit, Inc. (VCI).  Lehrer, Flaherty & Canavan (Lehrer, Flaherty) appeals the judgment of the trial court granting defendants’ motion for sanctions pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137).  
Defendants cross-appeal, challenging the amount of the award of sanctions.  We affirm.

In January 1991,
 plaintiffs purchased a 1990 Audi for $41,090.  The majority of the purchase was financed by VCI.  Pursuant to the loan agreement, VCI held a lien on the vehicle which was secured by an insurance policy issued by State Farm.  In the event of a loss, the insurance proceeds were to be used first to satisfy any outstanding balance on the loan.  Audi provided a limited new car warranty to repair defective parts or replace the parts with new or remanufactured genuine Audi parts for three years or 50,000 miles, whichever came first.  The warranty expressly excluded incidental or consequential damages, including loss of value of the vehicle, lost profits or earnings, and out-of-pocket expenses for substitute transportation or lodging. 

On May 2, 1992, Rita Belfour noticed smoke coming from the motor
 while 
she
 was driving the car with her two children
.  She pulled the car over, took her children out of the car, and summoned  help.  No one was injured.  

Rita called State Farm to report the loss.  On May 4, 1992, Laura Dukes, a senior claim representative for State Farm, advised plaintiffs that the car was a total loss.  At that time, $32,346 remained outstanding on the car loan.
  The car was towed on Edward Belfour’s direction to Elmhurst Ford.  Dukes and another State Farm employee, John Kessler, inspected the auto.  Kessler spoke with Edward and explained both State Farm’s subrogation policy and Audi’s policy regarding fire claim warranties.

State Farm contacted Audi on May 13, 1992.  Shortly after, Dan Anderson, product liaison engineer employed by Audi assigned to investigate the fire loss, contacted Kessler and asked if they could meet and inspect the car together.  Thereafter, Kessler informed Frank Taheny at Elmhurst Ford that he and Anderson were going to meet at Elmhurst Ford to inspect the car on May 15, 1992.  However, before the meeting took place, Edward advised Dukes that he did not want Audi to inspect the car.  Dukes then told Kessler, who, in turn, told Anderson.

On May 15, 1992, Dukes explained to Rita that State Farm had a potential subrogation interest and that Audi needed to look at the car if State Farm was to pay the claim to plaintiffs.  Edward informed Dukes that they were going to sue Audi exclusively and that they did not want State Farm involved at this point. 

On August 31, 1992, plaintiffs’ counsel, Norman Lehrer, sent a letter to each defendant demanding that the purchase price and all amounts paid on the contract for the car be returned to plaintiffs.  In addition, he demanded that defendants compensate plaintiffs for their damages.  

On September 11, 1992, Audi’s general counsel, Joseph Folz, responded to Lehrer, advising that Robert Cameron, the product liaison for Audi, would be contacting Lehrer.  Cameron called 
Lehrer
 three times between September 11 and October 7, 1992, but Lehrer was never available to take the calls and did not return them.  On October 7, Cameron wrote to Lehrer, asking that 
Lehrer
 return his phone calls so that Audi could conduct an inspection of the car and have an opportunity to honor its warranty obligation.  On October 15, 1992, 
Lehrer
 responded by threatening to file suit within seven days unless Audi honored plaintiffs’ revocation of acceptance and compensated them for their damages.

On October 23, 1992, after two more attempts to reach 
Lehrer
, Cameron finally spoke with 
Lehrer
.  On October 27, 
Lehrer
 wrote that the car would be available for inspection from November 3-5.  On November 5, Dan Anderson, Audi’s product liaison engineer, inspected the fire damage to the car and sent a report to Cameron.

On November 16, 1992, following the receipt of Anderson’s report, Cameron wrote Lehrer that, under the terms of the warranty, Audi was obligated to repair or replace the product.  Cameron offered that Audi would replace plaintiffs’ 1990 Audi with a new 1993 Audi and would pay any costs involved in the car exchange and provide a rental car until the new car became available.  The 1990 Audi retailed for $29,999 and the 1993 Audi retailed for $54,000.  
Lehrer
 did not respond to Cameron’s letter.  On November 25, Cameron sent another letter and 
Lehrer
 did not respond.  On December 7, Cameron sent another letter and Lehrer failed to respond.  Cameron sent a fourth letter on December 15 stating that Audi had been willing since the first notification of the fire in May to fulfill its obligation under the warranty but Audi had been continually prevented from doing so.  
Lehrer
 sent a letter to Cameron on December 18 stating only that Audi should set forth its settlement offer in writing.  Cameron responded, in a letter dated January 11, 1993, that 
Lehrer
 waited five months before allowing Audi to inspect the car; that Audi offered plaintiffs a brand new 1993 Audi, which retailed for at least $20,000 more than the 1990 Audi; and that Audi offered to provide a rental car and pay any out-of-pocket expenses involved in the car exchange.

Lehrer
 did not respond to Cameron’s letter.  Instead, on February 16, 1993, plaintiffs filed suit.  Counts I and II alleged that the dealership and Audi were liable for breaches of express and implied warranties, respectively, under the Magnuson-Moss Warranty Act (Magnuson-Moss) (15 U.S.C.A. §2301 
et
 
seq.
 (West 1982)).  Count III sought the revocation of the contract between the dealership and plaintiffs.  Count IV sought to revoke the retail installment loan agreement with VCI and the return of all installment payments previously made.  In particular, counts I through III alleged the following:

"12. Plaintiffs have provided Defendants sufficient opportunity to replace the automobile.

Plaintiffs have met all of their obligations and preconditions as provided in the written warranties.

Defendants have failed to replace the automobile, as provided in the written warranties, and the automobile remains totally unusable."

Audi made a final attempt to resolve the dispute.  In exchange for dismissing the suit, Audi offered either (1) to pay off the entire lien obligation to VCI, including the amount incurred due to plaintiffs’ refusal to allow Audi a timely inspection of the car, plus reimburse plaintiffs for 30 days car rental costs actually incurred following the fire; or (2) to replace the car with a comparable 1993 model under similar credit terms and use a portion of the purchase price to pay off the existing VCI loan, plus reimburse plaintiffs for 30 days car rental costs.  Audi’s counsel also advised that, in his opinion, plaintiffs had committed a violation of Supreme Court Rule 137 by alleging in the complaint that Audi had refused to offer a replacement vehicle.  Plaintiffs did not respond.

Audi then filed a motion for summary judgment and for sanctions under Rule 137 based on the false allegations in plaintiffs’ complaint.  The dealership and VCI joined in the motion.  Defendants asked, as an alternative, that the trial court set the matter for an immediate settlement conference and require that plaintiffs attend.  
Lehrer
 appeared at the conference without plaintiffs and no agreement was reached.

The trial court initially denied defendants’ motion for summary judgment because defendants needed to supplement the motion with an affidavit from Kessler, State Farm’s agent, to show that Audi attempted to correct the problem.  While defendants attempted to obtain the affidavit, plaintiffs filed a second amended complaint containing the same four counts as the original plus another count for strict liability against Audi and the dealership.  The trial court dismissed the strict liability count on defendants’ motion and plaintiffs have not appealed from that count.  Additionally, VCI filed a third-party complaint against State Farm.  The suit against State Farm was eventually dismissed upon its deposit of $35,223 into an escrow account.

Thereafter, the trial court granted summary judgment for defendants on all counts.  It found that no triable issues of fact existed because Audi attempted an inspection of the car immediately after notice of the fire and was repeatedly rebuffed and prevented from doing so by plaintiffs and/or their attorneys.  The court further found that Audi offered to do what it was legally obligated to do in compliance with its contractual warranty, existing Illinois law, and Magnuson-Moss requirements; that perfect tender was made; that plaintiffs were obligated to accept said tender; and that the failure to do so defeated any and all claims.

Following the granting of summary judgment, there remained several issues: (1) VCI’s counterclaim on the car loan; (2) VCI’s right to the State Farm escrow account; (3) defendants’ right to attorney fees pursuant to Rule 137; and (4) defendants’ motion for fees and costs against State Farm based on a rule to show cause.

At the hearing on the remaining issues, the court entered judgment for VCI in the amount of $43,698 and ordered State Farm to pay to VCI the amount it had placed in escrow up to the amount of the judgment, with any excess to be paid to plaintiffs.  Next, the court denied defendants’ petition for fees against State Farm.  

The court then heard evidence on defendants’ petition for fees against plaintiffs and their counsel pursuant to Rule 137.  The court admitted into evidence the billing records covering the period from the inception of the lawsuit through November 1997.  Based on plaintiffs’ objection, the court refused to admit the most recent invoice covering the period from December 1997 through February 1998.  Defendants then offered a letter written by defense counsel to 
Lehrer
 to establish that plaintiffs were on notice that defendants would seek to recover all fees in defending the suit and that defendants had tried to avoid engaging in unnecessary litigation.  The court refused to admit this letter even though it was already of record.  At the conclusion of the hearing, defendant asked that the court award damages of $65,209, the amount established by the exhibits admitted into evidence.

The trial court found that each defendant had promptly and expeditiously complied with its obligations under the warranty and that 
Lehrer
 had "acted obstreperously in having frustrated defendants [
sic
] efforts to achieve a prompt resolution, forcing all parties to pursue this litigation which was otherwise unnecessary."  The court ordered plaintiffs’ law firm only, Lehrer, Flaherty, and not plaintiffs, to pay fees to defendants in the amount of $32,694.  Plaintiffs and Lehrer, Flaherty timely appeal the trial court’s finding of summary judgment and award of attorney fees to defendants.  Defendants timely cross-appeal for additional fees.

As a preliminary matter, we must address plaintiffs’ motion to strike defendants’ statement of facts and the defendants' response to the motion, both of which we ordered to be taken with the case.  We find plaintiffs’ motion to be without merit.  Plaintiffs argue, without citing specific examples, that defendants’ statement of facts is argumentative and does not state the facts fairly and accurately.  Based on our review of the record, however, we find defendants’ facts to be accurately and fairly portrayed.  Accordingly, we deny plaintiffs’ motion to strike. 

On appeal,
 plaintiffs submit several arguments in an attempt to refute that their damages are not limited to the remedy of repair or replacement.  Plaintiffs first argue that they did not expressly agree to the exclusive remedy of repair or replacement and, because they did not expressly agree to limit their damages, they are not confined to that remedy but may seek alternative remedies as provided by the provisions of the Uniform Commercial Code (UCC) (810 ILCS 5/1--101 
et
 
seq.
 (West 1992)) and Magnuson-

Moss.  Plaintiffs alternatively argue that, even if they agreed to the exclusive remedy of repair or replacement, because they lost faith in the value of any Audi, the warranty "failed of its essential purpose" and, therefore, they could resort to other remedies.  

Summary judgment is proper when the pleadings, affidavits, and other documents on file, construed in favor of the nonmovant, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995).  
We review the entry of summary judgment 
de novo
.  
In re Estate of Hoover
, 155 Ill. 2d 402, 411 (1993).

We first point out that, contrary to plaintiffs’ argument that their damages are not limited to the repair or replacement of the car, plaintiffs alleged in their complaint that defendants "
failed to replace the car as provided in the written warranties
."  Thus, they concede that the warranty requires the car to be replaced.  

In any event, neither Magnuson-Moss nor Audi’s limited warranty requires more than the repair or replacement of the car.  The warranty issued by Audi expressly limits damages to repair or replacement.  Magnuson-Moss provides that the warrantor may elect to limit the warranty to repair or replacement and a refund only if repair or replacement is not practicable.  15 U.S.C.A. §2304 (a)(4) (West 1982).  Thus, unless replacement is impracticable, plaintiffs’ damages are limited to repair or replacement.

Moreover, a breach of the promise to repair or replace cannot occur until Audi refuses or fails to repair the defect.  See 
Cosman v. Ford Motor Co.
, 285 Ill. App. 3d 250, 260 (1996); 
Collum v. Fred Tuch Buick
, 6 Ill. App. 3d 317, 322 (1972); see also 15 U.S.C.A. §2310(e) (West 1982) (no action for damages may be brought for failure to comply with any obligation unless the warrantor is afforded a reasonable opportunity to cure such failure to comply).  The evidence clearly shows that Audi offered either to replace the car with a newer 1993 model or to pay off the entire lien obligation to VCI, including the amount incurred during the time plaintiffs refused to allow Audi to inspect the damage.  Such an offer was an appropriate remedy under the terms of Audi’s limited warranty, as well as Magnuson-Moss.  Because Audi offered to replace the car as required by its limited warranty and Magnuson-

Moss, there simply is no breach.  Accordingly, the trial court did not err in granting summary judgment to defendants on counts I and II.

Plaintiffs next argue that they are entitled to revoke  acceptance under section 2--608 of the UCC.  Section 2--608 provides:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its non-

conformity would be cured and it has not been seasonably cured[.]"  810 ILCS 5/2--608(1)(a) (West 1992).

Plaintiffs argue at length that defendants do not have the right to cure when the buyer rightfully revokes his acceptance.  This is not the law.  Under the UCC, the buyer must allow the seller time to cure before invoking revocation of acceptance.  See 
Collum
, 6 Ill. App. 3d 317.  Thus, courts will resort to revocation of acceptance only after attempts at adjustment have failed.  See 810 ILCS Ann.  5/2--608(1)(a), Committee Comments--1992, at 380 (Smith-Hurd 1993).  Here, plaintiffs’ revocation of acceptance was ineffective as Audi offered a proper cure.   

Plaintiffs argue that, even if the seller has the right to cure, tendering another car is not a proper cure because of their subjective psychological aversion to owning another Audi.  Again, this is not the law.  
Bodine Sewer, Inc.  v. Eastern Illinois Precast, Inc.
, 143 Ill. App. 3d 920, 931 (1986) (buyer’s subjective belief as to reduced value of goods tendered is of no significance).  Tendering another substantially similar vehicle is a proper cure because that is what the law requires.  See 810 ILCS 5/2--106(2) (West 1992) (goods are conforming when they are in accordance with the obligations under the contract).  The law does not require a plaintiff to be placed in a better position than when he started.  See 810 ILCS 5/1--106(1) (West 1992).  We note, too, that, while not required by law, Audi’s tendered cure would have placed plaintiffs in a better position than they would have been had the car not malfunctioned.  Moreover, even if the 1993 Audi was unacceptable to plaintiffs, Audi offered to take care of their lien.  Accordingly, plaintiffs may not revoke acceptance.  Therefore summary judgment was properly granted to defendants on count III.

Plaintiffs next concede that, if we conclude that the trial court correctly granted summary judgment as to the first three counts, summary judgment was properly granted as to count V (count IV in the previous complaint).  Because we conclude that the trial court properly granted summary judgment on counts I through III, we hold that the trial court correctly granted summary judgment to defendant on count V.  We have reviewed plaintiffs’ remaining contentions and find them to be without merit.  Accordingly, the trial court properly granted summary judgment against plaintiffs.

We next turn to the trial court’s order granting defendants’ motion for sanctions pursuant to Rule 137.  Lehrer, Flaherty argues that the trial court abused its discretion in awarding attorney fees to defendants. 

Supreme Court Rule 137 directs that litigants and attorneys have an affirmative duty to conduct an inquiry of the facts and the law prior to filing an action, pleading, or other paper.  
Amadeo v. Gaynor
, 299 Ill. App. 3d 696, 700 (1998).  A party or litigant is required by the rule to sign pleadings and other legal papers to certify that he or she has read the document, has made a reasonable inquiry into its basis, and believes that it is well grounded in fact and in law, or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.  
Amadeo
, 299 Ill. App. 3d at 701.

If the rule is violated, a party, the party's attorney, or both may be subject to an appropriate sanction, including the award of reasonable attorney fees to the opposing party.  
Beno v. McNew
, 186 Ill. App. 3d 359, 365 (1989).  Because the rule is penal in nature, it must be strictly construed.  
In re Estate of Wernick
, 127 Ill. 2d 61, 77 (1989).

A trial court’s decision to sanction a party under the rule will not be reversed on appeal absent an abuse of discretion.  
North Shore Sign Co. v. Signature Design Group, Inc.
, 237 Ill. App. 3d 782, 790 (1992).  Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court.  
Amadeo
, 299 Ill. App. 3d at 701.  

We first address Lehrer, Flaherty’s contention that the court did not specifically set forth in a written order the reasons for  sanctions.  After reviewing the record, we find that the crux of the trial court’s ruling was that the allegations contained in the complaint were knowingly false.  As noted, plaintiffs alleged that they provided defendants sufficient opportunity to replace the car, that they had met all their obligations and preconditions provided in the written warranty, and that defendants failed to replace the car as provided in the written warranty and under Magnuson-Moss.  When attorney Lehrer signed the complaint, it is obvious that he knew those allegations were false because three letters had already been sent to him from Audi offering a replacement vehicle.  Although the order does not specifically state the reasons for the award of sanctions, the decision to award sanctions need not be reversed where we can determine whether the trial court’s decision was informed, based on valid reasons that fit the case, and which followed logically from the order.  
Kellett v. Roberts
, 276 Ill. App. 3d 164, 172 (1995).  Based on our review of the record, we determine that the trial court did not abuse its discretion in imposing Rule 137 sanctions against Lehrer, Flaherty for filing a false complaint.

We next turn to defendants’ cross-appeal.  Defendants agree that the trial court correctly sanctioned Lehrer, Flaherty but contend that the trial court erred in refusing to admit two of defendants’ exhibits into evidence and in failing to award the total amount of damages sought.  While the trial court certified that a Rule 137 hearing was held and that evidence was submitted during the hearing, there is no transcript or bystander’s report of the hearing.  Without a transcript or report of the hearing itself, we are deprived of a basis for reviewing issues whose merits depend upon the matters omitted.  Other than the evidence of defendants’ fees and expenses, we do not know what evidence was heard and considered by the trial court in reaching its conclusion that certain evidence would not be admitted and in awarding less than the total amount of damages sought.  An appellant has the duty to present a complete record on appeal so that the reviewing court will be fully informed regarding the issues in the case, and absent an adequate record on appeal, it will be presumed that the trial court’s judgment conforms to the law and has a sufficient factual basis.  
Lakeland Property Owners Ass’n v. Larson
, 121 Ill. App. 3d 805, 808-09 (1984).  Accordingly, we find no abuse of discretion.

Finally, defendants have requested that we impose sanctions under Supreme Court Rule 375 (155 Ill. 2d R. 375(b))
 for filing a frivolous and bad-faith
 appeal.  A reviewing court may impose sanctions against a party for an appeal that is either frivolous or not taken in good faith.  
Beverly v. Reinert
, 239 Ill. App. 3d 91, 101 (1992).  An appeal will be deemed "frivolous" where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, or if a reasonable and prudent attorney would not have brought the appeal.  
Amadeo
, 299 Ill. App. 3d at 705.  An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense.  155 Ill. 2d R. 375(b).  Rule 375 sanctions are penal and should be applied only to those cases falling strictly within the terms of the rule.  
Beverly
, 239 Ill. App. 3d at 101. 

Plaintiffs claim on appeal that (a) defendants never filed a petition for fees under Rule 137; (b) defendants offered no evidence that Lehrer, Flaherty committed any Rule 137 violation; (c)  defendants offered no evidence of the attorney fees that were incurred as a result of Lehrer, Flaherty’s Rule 137 violation; and (d) the court did not hold a Rule 137 hearing on defendants’ petition for fees.  Defendants supplied this court with a supplemental record which included several documents that contradict plaintiffs’ allegations.  Lehrer was present in court when the trial court received and considered these documents.  Thus, plaintiffs’ assertions are completely unsupported by the record.

While plaintiffs have made a number of factually unsupported claims, the most egregious is their assertion that there was no Rule 137 hearing on defendants’ petition for fees.  The original record contains an order that Lehrer himself prepared that states that the cause was continued for a decision on defendants’ Rule 137 motion and that plaintiffs’ motion for a directed verdict on defendants’ Rule 137 motion was continued.  The matter could not have been the subject of a motion for directed verdict or been continued for a decision if no hearing had been held.  Regardless, the trial court certified that it held a Rule 137 hearing.

As detailed above, plaintiffs unquestionably prevented defendants from inspecting the fire damage to their car for close to six months and ignored Audi’s offer to cure before and after the suit was filed; p
laintiffs filed a complaint alleging that defendants had not offered a replacement vehicle despite the record clearly showing they had; and, even after the complaint was filed, plaintiffs continued to ignore Audi’s attempt to settle the dispute.  Plaintiffs’ arguments proffered to the trial court and on appeal are factually unfounded, lack merit, and are not based on the law as it now stands or on a good-faith extension of the law.  Moreover, plaintiffs continue to raise false assertions on appeal.  Plaintiffs’ only response to defendants’ request that we impose sanctions for a frivolous and bad-faith appeal is the conclusion that their appeal was brought in good faith.  
We can only conclude that the appeal is frivolous and made to harass.  Accordingly, we determine that sanctions are appropriate in this case.  

We therefore direct defendants to submit, within 14 days
, an affidavit and detailed statement of reasonable expenses and attorney fees incurred as a result of defending this appeal.  Plaintiffs and Lehrer, Flaherty will be given 14 days thereafter to respond to the reasonableness of the expenses and fees.  We will thereafter file an order determining the amount of the sanction to be imposed on plaintiffs and Lehrer, Flaherty
.  See 
First Federal Savings Bank v. Drovers National Bank
,  237 Ill. App. 3d 340, 347-

48 (1992).

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County, and we impose sanctions pursuant to Supreme Court Rule 375 against plaintiffs and 
Lehrer, Flaherty
.

Affirmed; sanctions imposed.

McLAREN and GEIGER, JJ., concur.